UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
ROBERT I. TOUSSIE and
CHANDLER PROPERTY, INC.,

                    Plaintiffs,        <u>MEMORANDUM & ORDER</u>
                                      01-CV-6716(JS)(ARL)

     -against-

COUNTY OF SUFFOLK, ROBERT J. GAFFNEY,
individually, and in his official
capacity as Suffolk County Executive,
ALLEN GRECCO, and PEERLESS ABSTRACT
CORP.,

                    Defendants.
--------------------------------------X
ROBERT I. TOUSSIE, LAURA TOUSSIE,
ELIZABETH TOUSSIE, MICHAEL I. TOUSSIE,
PRAND CORP. f/k/a CHANDLER PROPERTY,
INC., ARTHUR A. ARNSTEIN CORP.,
TOUSSIE LAND ACQUISITION & SALES CORP.,
and TOUSSIE DEVELOPMENT CORP.        05-CV-1814(JS)(ARL)

                    Plaintiffs,

     -against-

COUNTY OF SUFFOLK, PAUL SABATINO, II,
PATRICIA B. SIELINSKI and THOMAS A.
ISLES,

                    Defendants.
--------------------------------------X
APPEARANCES
For Plaintiffs:             Abbe David Lowell, Esq.
                        Chadbourne & Parke, LLP
                        1200 New Hampshire Avenue NW
                        Washington, DC 20036

Scott S. Balber, Esq.
Emily Abrahams, Esq.
Jeffrey Carson Pulley, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

For Defendants:
County of Suffolk;                    Arlene S. Zwilling, Esq.
Robert J. Gaffney,                    John Richard Petrowski, Esq.
Individually and in                   Chris P. Termini, Esq.
his official capacity                 William G. Holst, Esq.
as Suffolk County                     Suffolk County Attorney's Office
Executive; Patricia                   P.O. Box 6100
B. Sielinski; and                     H. Lee Dennison Building-5th Floor
Thomas A. Isles                       100 Veterans Memorial Highway
                                      Hauppauge, NY 11788

Paul Sabatino, II                     Anton J. Borovina, Esq.
                                      Law Office of Anton J. Borovina
                                      510 Broad Hollow Road, Suite 304A
                                      Melville, NY 11747

SEYBERT, District Judge:

Plaintiffs, Robert I Toussie ("Toussie") and Chandler Property, Inc., began this action (01-CV-6716) in October 2001, asserting that their civil rights had been violated when the Defendants, Suffolk County and Robert J. Gaffney ("Gaffney"), denied them the opportunity to purchase thirty-one parcels of real estate at the 2001 Suffolk County Surplus Auction. (2001 Am. Compl. [Doc. No. 45].) In April 2005, those plaintiffs, joined by Laura Toussie, Elizabeth Toussie, Michael I. Toussie, Prand Corp. f/k/a Chandler Property, Inc., Arthur A. Arnstein Corp., Toussie Land Acquisition and Sales Corp., and Toussie

Development Corp. (collectively "Plaintiffs" or "Toussies"), commenced a second action (05-CV-1814) asserting similar claims under 42 U.S.C. § 1983. (2005 Compl. [Doc. No. 1].) The 2005 Complaint alleged that the Defendants, Suffolk County, Paul Sabatino, II ("Sabatino"), Patricia B. Zielsinki ("Zielinski")[1], and Thomas A. Isles ("Isles"), violated Plaintiffs' civil rights when they blocked the sale of sixteen parcels in 2002 and barred Plaintiffs' attendance from public auctions in 2004. As they had in the 2001 Amended Complaint, Plaintiffs also asserted several state law claims including, among other things, breach of contract, unjust enrichment, and defamation. On May 18, 2007, the Court consolidated the 2001 and 2005 actions in the interest of judicial economy. [Doc. No. 182]. Pending before the Court is Defendants' motion for summary judgment. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[2]

Defendant Suffolk County ("Suffolk County" or "the County") regularly auctions real property that it has acquired as a result of non-payment of real estate taxes. (Pls.' 56.1 Stmt. ¶ 6.) The terms and conditions governing the auctions are

---

[1] Ms. Zielinski's name is spelled incorrectly in the case caption and 2005 Complaint.
[2] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements ("56.1 Stmt.") and their evidence in support. Any relevant factual disputes are noted.

set forth in an auction booklet, which is passed as legislation pursuant to County law and distributed in advance of the auction. (<u>Id.</u> ¶ 32; Pls.' 56.1 Supp. ¶ 36; Defs.' 56.1 Stmt. ¶ 3.)

The County held an auction on May 23-24, 2001[3] ("2001 Auction"), where Plaintiff Toussie was the highest bidder on four parcels, and Plaintiff Chandler Property, Inc. was the highest bidder on twenty-seven parcels. (Pls.' 56.1 Stmt. ¶¶ 5, 12.) Pursuant to the terms and conditions of the 2001 Auction, Plaintiffs entered into memoranda of sale for each parcel and tendered the required 20% down payment and auction fee for each of the thirty-one properties. (Pls.' 56.1 Stmt. ¶ 5.) All auction sales, however, were conditioned upon approval by the Suffolk County Legislature ("Legislature"). (Defs.' 56.1 Stmt. ¶ 4.)[4] The Legislature's discretion to approve or disapprove the

---

[3] Defendants assert that the 2001 Auction took place on May 22-23, 2001 (Defs.' 56.1 Stmt. ¶ 5); however, Defendants fail to provide a citation to any evidence in support. Nonetheless, such discrepancy is immaterial.

[4] The Terms and Conditions state:

> [T]his sale is further conditioned upon, and subject to the approval of the Suffolk County Legislature and the County Executive, or charter approval. In the event the proposed resolution of approval of the sale is not approved by the Suffolk County Legislature, then the Seller shall return to the Purchaser the down payment due the purchaser . . . . Upon return of such down payment, the parties shall then be mutually released from any and all other obligations

sales was not limited in the auction booklet, the Suffolk County Administrative Code, or Terms and Conditions of Sale.

The Legislature's approval of the sales was sought on an expedited basis,[5] meaning that the resolution would be submitted to the full Legislature, rather than to the Ways & Means Committee ("Committee") for initial approval. (Id. ¶ 12.) On recommendation of Defendant Sabatino, counsel to the Legislature, the resolution approving the 2001 Auction sales was split into two bills: Introductory Resolution 1676-01 ("IR 1676-01"), which proposed authorization of the sale of parcels to Plaintiffs, and Introductory Resolution 1675-01 ("IR 1675-01"), which proposed authorization for the sale of parcels to all other buyers. (Defs.' 56.1 Stmt. ¶ 13.) The County had never before split auction sales into two separate resolutions.

IR 1675-01 was expedited and submitted to the full Legislature on June 26, 2001; it was approved by a vote of 17-1. IR 1676-01, on the other hand, was submitted to the Committee on

herein. It is hereby understood and agreed that this contract is binding upon both the Purchaser and the County unless the sale is disapproved by the operation of the Suffolk County legislative process.

(Defs.' 56.1 Stmt. ¶ 4 & Ex. B (emphasis in original).) Similarly, the Suffolk County Administrative Code § A-42-2 (previously § A14-30) states that all deeds are subject to express approval by the County Legislature.

[5] The County bore the risk of loss of any deterioration or damage to the properties prior to closing, so the County wanted to close on the properties as quickly as possible. (Pls.' 56.1 Stmt. ¶ 12.)

July 30, 2001 and was tabled.[6]   On August 7, 2001, the full
Legislature considered a motion to discharge IR 1676-01 from
Committee.   Present were members of the community who objected
to the properties ever being sold to Toussie or any company
affiliated with him.   The motion was defeated.   (Pls.' 56.1
Stmt. ¶ 17; Defs.' 56.1 Stmt. ¶ 17.)   The Committee again
considered IR 1676-01 on August 20, 2001 and this time
unanimously defeated it.   Counsel for Toussie as well as members
of the community again appeared to testify regarding the sale.
(Defs.' 56.1 Stmt. ¶¶ 18-20.)   In response to complaints from
community-members, Toussie's attorney stated that Toussie would
agree that neither he nor his son would develop the property.
(Pls.' 56.1 Supp. ¶ 16; Pls.' 56.1 Stmt. ¶ 19.)   Despite these
assurances, on August 28, 2001, after again hearing testimony
from community members in opposition to the sales, the
Legislature affirmed the Committee's action.   (Pls.' 56.1 Stmt.
¶ 21; Defs.' 56.1 Stmt. ¶ 21.)   Plaintiffs allege that the
Legislature had no legitimate reason for defeating IR 1676-01,
but did so to pander to their constituents for political gain.
(Pls.' 56.1 Stmt. ¶ 25.)   Defendants assert that the County's

---

[6] The committee to which an introductory resolution is assigned
can approve it by a majority vote, discharge it to the full
Legislature by a majority vote without considering the merits,
vote to table it to the next meeting, vote to table it "subject
to call" or defeat it by voting against a motion to approve.
(Pls.' 56.1 Supp. ¶ 3.)

decision was based on their legitimate concerns regarding Toussie's business practices.[7] On October 11, 2001, Toussie and Chandler Property, Inc. commenced one of the two actions consolidated herein challenging the Legislature's failure to approve these sales.

On March 18, 2002, Toussie wrote a letter to the County asking "that the County advise [him] as soon as possible if it intend[ed] to prohibit [him] from purchasing property at the May 2002 Auction." (Pls.' 56.1 Supp. ¶ 21.) The County responded stating that "the failure of the Suffolk County Legislature to approve the conditional sales for the May 2001 auction, did not include a directive barring him from future actions," but also cautioning that "participation does not carry with it a guarantee of success" because "sales are conditioned

---

[7] Before the 2001 Auction sales were submitted to the Legislature, Isaac Toussie ("Isaac"), Toussie's son, pled guilty to submitting false and fraudulent mortgage applications to the United States Department of Housing and Urban Development in connection with his sale of homes through some of Toussie's companies, which he had been operating. (Defs.' 56.1 Stmt. ¶ 7 & Ex. D.) Long Island Newsday published articles about Isaac's "HUD Scam" and a proposed class action lawsuit in the process of being filed by a group of homeowners who were claiming that they had been scammed into buying overpriced and poorly built homes from Isaac and Toussie. (Id. ¶¶ 8-9 & Exs. E, F; Pls.' 56.1 Stmt. ¶ 13.) The articles noted that Toussie had not been charged with committing any crimes. (Pls.' 56.1 Stmt. ¶¶ 8-9.) The County made no effort to confirm any of the allegations in these or subsequent Newsday articles about the Plaintiffs. (Pls.' 56.1 Supp. ¶¶ 14, 18-19.)

upon the discretionary approval of the Suffolk County Legislature." (Pls.' 56.1 Stmt. Ex. 47.)

The County held another auction on May 15-16, 2002 ("2002 Auction"). The auction booklet and Terms and Conditions of Sale were identical to those in the 2001 Auction. Toussie, his company, Prand Corp., his wife, Laura Toussie, her company, Arthur A. Arnstein Corp., his daughter, Elizabeth Toussie, his brother, Michael Toussie, and companies bearing the Toussie name but not owned or operated by the family, Toussie Land Acquisition & Sales Corp. and Toussie Development Corp. were the winning bidders on sixteen properties. (Pls.' 56.1 Stmt. ¶ 33.) They again signed memoranda of sale and tendered the required 20% down payment and auction fee for each of the sixteen properties. (Id.)

On June 11, 2002, IR 1730-2002, which proposed the approval of the sale of parcels to the high bidders at the 2002 Auction, was presented to the Legislature. The resolution was assigned to the Committee, which voted unanimously on June 17, 2002 to table IR 1730-2002 so that separate resolutions segregating the Toussie-related parcels could be drafted and introduced. (Defs.' 56.1 Stmt. ¶ 35 & Ex. X.)[8]

---

[8] The Legislature, in segregating Toussie's parcels, was motivated, in part, by Plaintiffs' pending litigation. (Pls.' 56.1 Stmt. ¶ 54 & Ex. X.)

On June 25, 2002, two resolutions, IR 1800-2002, which proposed approval of the sales to Plaintiffs, and IR 1801-2002, which proposed approval of the remaining sales, were introduced and assigned to the Committee. (Defs.' 56.1 Stmt. ¶ 36.) On July 29, 2002, IR 1801-2002 was discharged from Committee, and on August 6, 2002, it was approved by the Legislature. (Id. ¶¶ 37-38.) IR 1800-2002, on the other hand, was tabled then re-tabled three times by the Committee. (Defs.' 56.1 Stmt. ¶¶ 39-48.) At the November 15, 2002 Committee meeting, Plaintiffs' counsel, Richard Hamburger, again stated that Plaintiffs were willing to enter into a binding agreement that would preclude any residential development of the parcels and Isaac's involvement with the land in any manner. (Pls.' 56.1 Stmt. ¶ 42.) Nevertheless, at the December 9, 2002 Committee meeting, IR 1800-2002 was defeated. (Id. ¶ 48; Defs.' 56.1 Stmt. ¶ 48.) IR 1800-2002 was never voted on by the full Legislature, and it died in Committee.

On or about April 25, 2003, Plaintiffs filed an Article 78 proceeding in the Supreme Court of Suffolk County challenging the Legislature's disapproval of their sales in the 2002 Auction. See Toussie v. County of Suffolk, No. 03-9048 (N.Y. Sup. Ct. Suffolk Cnty. Sept. 23, 2003) (Defs.' 56.1 Stmt. Ex. OO.). The Supreme Court found in favor of Defendants, holding that (1) no valid contract existed, (2) in disapproving

the sale, the Legislature was acting "within the clear letter of th[e] contract language," and (3) the Legislature's decision was not arbitrary or capricious. Id. The Appellate Division affirmed, see Toussie v. Cnty. of Suffolk, 26 A.D.3d 506, 809 N.Y.S.2d 573 (2d Dep't 2006), and the Court of Appeals denied leave to appeal, see Toussie v. County of Suffolk, 7 N.Y.3d 11, 823 N.Y.S.2d 770 (2006).

The County held another auction on November 30 and December 1, 2004 ("2004 Auction"). (Defs.' 56.1 Stmt. ¶ 64.) Toussie was the winning bidder on one parcel, but the County refused to allow him to sign a memorandum of sale. (Pls.' 56.1 Supp. ¶ 32.) Assistant County Attorney George Nolan then instructed the auctioneer not to accept any more bids from Toussie or anyone with a close relationship to him and directed the police to escort Toussie, his wife and his attorney from the auction room. (Id. ¶¶ 32-33.) After Mr. and Mrs. Toussie were escorted from the premises, Toussie's attorney, Richard Hamburger, returned to bid on properties as agent for Toussie. (Id. ¶ 34.) Although he was the highest bidder, the County refused to accept any down payment or auction fee and refused to allow him to sign the memoranda of sale on Toussie's behalf. (Id.) Plaintiffs assert that Defendants Sabatino, Isles and Zielinski made the decision to reject Toussie's bids and remove Mr. and Mrs. Toussie from the auction. (Id. ¶¶ 33, 35.)

On April 13, 2005, Plaintiffs commenced the second of the two actions consolidated herein challenging the Legislature's failure to approve the 2002 Auction sales and the County's refusal to allow Mr. and Mrs. Toussie to participate in the 2004 Auction. On May 18, 2007, the two actions were consolidated, and on February 22, 2011, Defendants filed for summary judgment.[9]

DISCUSSION

I.   Standard of Review

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir.

---

[9] Defendant Sabatino joined the Defendants Suffolk County, Gaffney, Isles and Zielinski in moving for summary judgment by letter dated February 23, 2011. Plaintiffs object to Defendant Sabatino's letter because it was filed one day late. However, Plaintiffs also filed their opposition brief one day late. The Court will not penalize either party and has considered all submissions filed by all parties related to this motion.

1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Similarly, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41 (citing Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)).

II. Collateral Estoppel

Defendants argue that collateral estoppel bars "[t]he bulk" or "most, if not all" of Plaintiffs' claims. (Defs.' Mem. 2.) Under New York law,[10] collateral estoppel or issue

---

[10] The Court applies New York law because in determining the preclusive effects of a state court decision, federal courts are

preclusion bars a party from re-litigating an issue that (1) was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted has a full and fair opportunity to litigate the issue in the prior proceeding. See Colon v. Coughlin, 53 F.3d 865, 869 (2d Cir. 1995); D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664, 564 N.E.2d 634, 636, 563 N.Y.S.2d 24, 26 (1990). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." Colon, 58 F.3d at 869 (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584, 588 (1985)). Issue preclusion will apply only if it is quite clear that these requirements have been satisfied, lest a party be "precluded from obtaining at least one full hearing on his or her claim." Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 485, 386 N.E.2d 1328, 1331, 414 N.Y.S.2d 308, 311 (1979).

Specifically, Defendants argue that all of Plaintiffs' state common law breach of contract claims (2001 Am. Compl. Counts V, VI; 2005 Compl. Counts XIV, XV, XXIV), equal

to give a prior state court decision the same preclusive effects that the courts of that state would give it. See Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); Colon v. Coughlin, 58 F.3d 865, 869 n.2 (2d Cir. 1995).

protection claims (2001 Am. Compl. Count II; 2005 Compl. Counts III, XX, XXVI), bill of attainder claims (2001 Am. Compl. Count I; 2005 Compl. Counts XIII, XIX, XXIX), and substantive and procedural due process claims (2001 Am. Compl. Count III; 2005 Compl. Counts I, V, XXII, XXVII, XXVIII) are barred by the Suffolk County Supreme Court's decision in <u>Toussie v. County of Suffolk</u>, No. 03-9048 (Sup. Ct. Suffolk Cnty. Sept. 23, 2003), <u>aff'd</u>, 26 A.D.3d 506, 809 N.Y.S.2d 573 (2d Dep't 2006) because "all issues regarding the Legislature's authority, discretion and legal basis for refusing to execute or approve sales of auction properties . . . have been fully litigated and resolved against [P]laintiffs" (Defs.' Mem. 5).[11]

A.  <u>All Claims Based on 2001 and 2004 Auctions</u>

Defendants assert that the state court's decision with respect to the 2002 Auction bars all contract, bill of attainder, equal protection, and substantive and procedural due process claims arising out of the 2001 and 2004 Auctions.

_____

[11] It is unclear whether Defendants are also asserting that res judicata or claim preclusion bars Plaintiffs' claims. (Defs.' Mem. 3.) But "claim preclusion generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter." <u>Colon</u>, 58 F.3d at 870 n.3; <u>accord</u> <u>Karamoto v. N.Y.C. Hous. Auth.</u>, 170 F. Supp. 3d 372, 377 (S.D.N.Y. 2001); <u>Cohen v. City of N.Y.</u>, No. 106947/98, 2001 WL 1635441 (N.Y. Sup. Ct. N.Y. Cnty. Sept. 26, 2001). Here, Plaintiffs are seeking relief not available to them in the Article 78 proceeding, therefore, res judicata is inapplicable.

Defendants' argument is based primarily on the fact that the language requiring approval of the Legislature, as set forth in the auction booklet, Memorandum of Sale, and applicable Administrative Code provision, is identical for the 2001, 2002 and 2004 Auctions, and the fact that Plaintiffs' past and present business practices, which factored into the Legislature's refusal to deliver deeds in 2002, remained a constant fact whenever the Legislature was faced with the prospect of selling auction properties to the Plaintiffs.

Similar facts or circumstances surrounding the actions, however, do not establish identity of the issues between the Article 78 proceeding and the 2001 and 2004 Auctions. Collateral estoppel depends on the specific facts of each case and will only prohibit the re-litigation of issues that were "actually and necessarily" decided. The Article 78 proceeding dealt exclusively with the 2002 Auction, and the court there held that the Legislature's disapproval of that particular sale to Plaintiffs was not arbitrary or capricious. The Supreme Court's opinion, the appellate record, and the Second Department's opinion are void of any facts regarding the 2001 Auction or the 2004 Auction. Since Plaintiffs have not had any opportunity to argue the unique facts of either of the other two auctions, collateral estoppel will not preclude those claims. See, e.g., Davis v. Halpern, 813 F.2d 37, 40 (2d Cir.

1987) (no identity of issues between Article 78 proceeding and current civil rights litigation when "state proceeding dealt only with Davis' second [allegation of discrimination], not with his first (which was barred by the four-month statute of limitations in Article 78 proceedings) or the third . . . (which has not yet occurred)"); Ponterio v. Kaye, No. 06-CV-6289, 2007 WL 141053, at *10 (S.D.N.Y. Jan. 22, 2007) (collateral estoppel did not bar plaintiff from bringing claim arising out of conduct that occurred after state court issued its decision).

B.   State Common Law Breach of Contract Claims Based on 2002 Auction

While Defendants have failed to meet their burden with respect to the claims arising out of the 2001 and 2004 Auctions, they have sufficiently established that there is identity of the issues as between the Article 78 proceeding and the state law contract claim related to the 2002 Auction (2005 Compl. Count XXIV).  In their 2005 Complaint, Plaintiffs allege that "[t]he disapproval of the sales by the Suffolk County Legislature was arbitrary, capricious, in bad faith, and in violation of the law, and contrary to the terms of the contracts formed when the memoranda of sale were signed.  Thus, the County breached the contracts."  (2005 Compl. ¶ 287.)  Plaintiffs raised the identical question before the Supreme Court of Suffolk County. See Toussie v. Cnty. of Suffolk, No. 03-9048 (N.Y. Sup. Ct.

Suffolk Cnty. Sept. 23, 2003) ("Toussie plaintiffs argue that the disapproval was made in violation of lawful procedure, was arbitrary and capricious and constituted an abuse of any discretion."). The court held (1) that no valid contract existed, (2) that in disapproving the sale, the Legislature was acting "within the clear letter of th[e] contract language," and (3) that the Legislature's decision was not arbitrary or capricious. Id. The Appellate Division affirmed. See Toussie v. Cnty. of Suffolk, 26 A.D.3d 506, 809 N.Y.S.2d 573 (2d Dep't 2006). Those issues are identical to issues in the present case.

Plaintiffs respond by arguing that they did not have a full and fair opportunity to litigate their contract claims in the Article 78 proceeding. (Pls.' Opp'n 12-15.) Factors to be considered when determining whether there was a full and fair opportunity to litigate the issue in the prior action include "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." Gilberg v. Barbieri, 53 N.Y.2d 285, 292, 423 N.E.2d 807, 441 N.Y.S.2d 49, 51, (1981) (emphasis added) (citation omitted); see also King v. Fox, 418 F.3d 121, 130 (2d Cir. 2005).

Plaintiffs argue that they did not have a full and fair opportunity to litigate their claims in state court because of the discovery of new evidence in the form of (1) the Legislative record revealing that IR 1800-2002 was never "disapproved" but was instead repeatedly tabled until it expired; (2) "subsequent discovery" revealing that prior to Defendants' refusal to approve the sale of surplus property to Plaintiffs there had never before been a refusal of such sales; and (3) former Legislator Fred Towle's[12] guilty plea to bribery and fraud. (Pls.' Opp'n 12-15.)

The Legislative record and the "subsequent discovery" are not "new" evidence that would bar the application of collateral estoppel. Courts have held that evidence is not new if it was available during the pendency of the prior action. See Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 504, 467 N.E.2d 487, 492-93, 478 N.Y.S.2d 823, 828-29 (1984); Feldstein v. N.Y. State Office of Mental Health, Bronx Psychiatric Ctr., 846 F. Supp. 1089, 1101 (E.D.N.Y. 1994). Evidence is available if it was in the party's possession or the party could have obtained it during the prior proceeding. See Ryan, 62 N.Y.2d at 504, 467 N.E.2d at 492-93, 478 N.Y.S.2d at 828-29) (finding that evidence in party's possession but not introduced in prior proceeding is

---

[12] Towle was a member of the Committee at all relevant times. (Defs.' 56.1 Stmt. ¶¶ 10, 39; Pls.' Opp'n 13.)

not "new evidence" that would defeat the application of collateral estoppel in a later proceeding); Feldstein, 846 F. Supp. at 1101 (holding that a party cannot rely on his failure to engage in discovery during an Article 78 proceeding to defeat collateral estoppel). Plaintiffs were in possession of the Legislative record when they brought their Article 78 proceeding, and they could have engaged in discovery during that proceeding to obtain the statistics regarding how often the Legislature disapproved sales. A party has a full and fair opportunity to litigate so long as "the procedures in the initial forum meet the minimum demands of procedural due process." Rameau v. N.Y. State Dep't of Health, 741 F. Supp. 68, 71 n.3 (S.D.N.Y. 1990) (citing Kremer, 456 U.S. at 483-84). The Article 78 proceeding provided Plaintiffs with a forum to request and present the previously-described "new" evidence; therefore, Plaintiffs cannot argue that their failure to utilize that forum deprived them of their ability to fully litigate this issue.

Towle's guilty plea to third degree receipt of bribery and first degree scheme to defraud, on the other hand, is new evidence that was not considered by the Supreme Court or Appellate Division in the Article 78 proceeding. The guilty plea, coupled with the fact that during a deposition in this case, Towle invoked his Fifth Amendment privilege against self-

incrimination[13] when asked whether he received bribes or acted as a conduit for bribes to other legislators during his tenure in exchange for voting against approval of the "Toussie resolutions" (Pls.' 56.1 Stmt. ¶ 17; Towle Dep. 89-90), could have factored into the state courts' analyses of whether the Legislature's action was arbitrary and capricious. Both courts concluded that the Legislature based its decision on Toussie's past and present business practices and held that the Legislature had a rational basis to do so. Since new, previously-unavailable evidence suggests that some of the legislators may have been motivated by bribes, as opposed to Toussie's business practices, Plaintiffs will not be barred from re-litigating the issue of whether the decision was arbitrary and capricious. The other issues, however--whether there was a valid contract and whether the Legislature was acting within the boundaries of that contract--are barred by collateral estoppel.

C.    Constitutional Claims Based on 2002 Auction

Defendants assert that Plaintiffs' equal protection, bill of attainder, and substantive and procedural due process claims related to the 2002 Auction are all barred by collateral

---

[13] The finder of fact is permitted to draw an adverse inference from a non-party witness's invocation of his Fifth Amendment privilege in a civil proceeding. See LiButti v. United States, 107 F.3d 110, 120-21 (2d Cir. 1997); Nu-Chem Labs., Inc. v. Dynamic Labs., Inc., No. 96-CV-5886, 2001 WL 35981560, at *19 (E.D.N.Y. Mar. 30, 2001).

estoppel because of the Supreme Court and Appellate Division's finding that the decision to disapprove Plaintiffs' bid was not arbitrary and capricious and was "rationally based on legitimate concerns about the petitioners' past and present business practices." Toussie, 26 A.D.3d at 507, 809 N.Y.S.2d at 574-75. However, since the Court has decided that Plaintiffs are not barred from re-litigating that issue based on new evidence, none of Plaintiffs' constitutional claims are barred by collateral estoppel.

III. Claims Under 42 U.S.C. § 1983

Plaintiffs bring all of their federal claims under 42 U.S.C. § 1983. Section 1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

For claims under § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999) (citing Dwares v. City of N.Y., 985 F.2d 94, 98 (2d Cir. 1993)). Here, the Defendants do not dispute

that Defendants were acting under color of state law. The issue, therefore, is whether Defendants' conduct deprived Plaintiffs of a constitutionally protected right.

A.  Bill of Attainder

Plaintiffs allege that the "Legislature's decision to disapprove the sale[s]" in 2001 and 2002 and "to approve the[] sales [in 2004] over the objections of Mr. and Mrs. Toussie" constitute unlawful bills of attainder in violation of the Constitution. (2001 Am. Compl. Count I, 2005 Compl. Counts XIII, XIX, XXIX.) The United States Constitution prohibits any state from passing a bill of attainder. U.S. CONST. art. I, § 10, cl. 1. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977); see also United States v. Lovett, 328 U.S. 303, 315, 66 S. Ct. 1073, 90 L. Ed. 1252 (1946) ("[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution.").

To determine whether a legislative act[14] is a bill of attainder, "the Supreme Court has adopted a three-pronged conjunctive test that considers whether the act: (1) imposed punishment, (2) specified the affected persons, and (3) lacked the protection of judicial process." In re Extradition of McMullen, 989 F.2d 603, 611 (2d Cir. 1993) (citing Selective Serv. Sys. v. Minn. Pub. Interest Research Grp., 468 U.S. 841, 847, 104 S. Ct. 3348, 82 L. Ed. 2d 632 (1984)). Here, the lack of a judicial trial is undisputed. Potentially at issue are whether the resolutions singled out the Toussies and if the resolutions inflicted punishment.

The Court finds that the Toussies were sufficiently singled out with respect to the resolutions passed subsequent to the 2001 and 2002 elections.[15] Defendants do not appear to dispute this. The Court does not find, however, that the 2004 resolution specifically identified Plaintiffs. The resolution does not mention Plaintiffs, and unlike with the 2001 and 2002 resolutions, Plaintiffs' sales were not excised and placed in a

[14] Defendants' argument that there is no "legislative act" here because "there was simply no legislation enacted which disapproved or in any way addressed auction bids" (Defs.' Mem. 11) misinterprets Plaintiffs' claim. Although not entirely clear from their complaints, Plaintiffs argue that the resolutions approving the sales to other individuals, not the decisions not to approve Plaintiffs' sales, are the alleged bills of attainder.

[15] In fact, IR 1801-2002 actually includes all of the properties sold at auction with Plaintiffs' properties crossed out. (Pls.' 56.1 Stmt. Ex. 35.)

23

separate resolution.  Plaintiffs argue in their opposition brief that only Resolutions 1675-01 and 1801-2002 are bills of attainder (Pls.' Opp'n 17) and do not even attempt to raise a genuine issue of material fact as to whether they were specifically identified in the 2004 resolution approving the sales.  Therefore, the Court GRANTS summary judgment as to Plaintiffs' bill of attainder claim arising out of the 2004 Auction and Count XIII of the 2005 Complaint is dismissed.

The remaining issue is whether IR 1675-01 and IR 1801-2002 inflict punishment.  There are three factors courts look at to determine whether a statute is punitive: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes;' and (3) whether the legislative record 'evinces a [legislative] intent to punish.'" Selective Serv. Sys., 468 U.S. at 852 (alteration in original) (quoting Nixon, 433 U.S. at 473).  A statute does not need to fit into each factor to be considered a bill of attainder; "rather, those factors are the evidence that is weighed together in resolving a bill of attainder claim." Consolidated Edison Co. of N.Y., Inc. v. Pataki, 292 F.3d 338, 350 (2d Cir. 2002) (citing Nixon, 433 U.S. at 473-78).

Under the historical test, "statutes imposing punishment traditionally judged to be prohibited by the Bill of Attainder Clause, including death, imprisonment, banishment, punitive confiscation of property by the sovereign and . . . laws barring designated individuals or groups from participation in specified employments or vocations have been held to violate the prohibitions on Bills of Attainder." N.Y. State Trawlers Ass'n v. Jorling, 16 F.3d 1303, 1312 (2d Cir. 1994) (citations and internal quotation marks omitted). The resolutions at issue here impose none of these burdens. While the resolutions may have interfered with Plaintiffs' ability to buy property in Suffolk County, the resolutions did not act as a complete bar to Plaintiffs' profession: The Toussies may still purchase non-County property, and they are free to purchase property from other counties. See, e.g., id. (law prohibiting fishermen from using trawls to catch lobsters did not bar them from participating in their profession, as the fishermen were free to catch lobsters by other means or use trawls to catch other types of fish).

However, failure to meet the historical test is not dispositive. See Nixon, 433 U.S. at 475-76. The resolutions may still be unconstitutional bills of attainder if they do not further a legitimate non-punitive purpose or if the Legislature's intent in passing the resolutions was to punish

the Toussies. Defendants do not address either the functional test or the motivational test in their briefs. They, instead, rely on the Supreme Court's Article 78 decision which stated that the Legislature's decision to disapprove of the sales to the Toussies was rationally based on a legitimate government interest. (Defs.' Reply 8.) Defendants argue that Plaintiffs' bill of attainder claims are therefore barred by collateral estoppel because that holding necessarily implies that the Legislature was not motivated by an unlawful purpose. (Id.) But, as this Court previously held, the Plaintiffs are not barred from re-litigating this issue.

The Court finds that Plaintiffs have raised genuine issues of material fact as to whether the resolutions were punitive in nature and could not reasonably serve non-punitive purposes. Although protecting Suffolk County residents and appeasing political constituents may be a non-punitive purpose, the record contains evidence of potential chastising and deterrent motives (see, e.g., Defs.' 56.1 Stmt. Ex. M, Pls.' 56.1 Stmt. ¶¶ 23-25, 54), both of which are purposes consistent with punishment. See Consolidated Edison Co., 292 F.3d at 353 ("General and specific deterrence are . . . traditional justifications for punishment."); Lovett, 328 U.S. at 311-314 (finding that a record revealing that legislature discussed moral blameworthiness of specified individuals is evidence of

punitive purpose); see also Nixon, 433 U.S. at 480 ("[A] major concern [] prompt[ing] the bill of attainder prohibition: [was] the fear that the legislature, in seeking to pander to an inflamed popular constituency, will find it expedient openly to assume the mantle of judge or, worse still, lynch mob.").

Additionally, the existence of a "less burdensome alternative[] by which [the] legislature . . . could have achieved its legitimate nonpunitive objectives" undermines any purported non-punitive objective. Id. at 483. Here, there is evidence that Plaintiffs offered to enter into an agreement barring residential development and Isaac Toussie's involvement with the property. (Pls.' 56.1 Stmt. ¶ 42; Pls.' 56.1 Supp. ¶ 16.) As such, there are material factual disputes, and summary judgment with respect to Count I of the 2001 Complaint and Counts XIX and XXIX of the 2005 Complaint is DENIED.

B.    Equal Protection

Defendants argue that Plaintiffs' "class-of-one" equal protection claims must be dismissed because the Toussies were not similarly situated to any other buyer.[16] To prevail on a class-of-one equal protection claim, Plaintiffs must establish "that they were intentionally treated differently from other

_____

[16] Defendants also again argue that the state courts' decisions relating to the Article 78 proceeding bar Plaintiffs from re-litigating the issue of the Legislator's intent. But, as this Court previously explained, that issue is not barred by collateral estoppel.

similarly-situated individuals without any rational basis."
Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)
(citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct.
1073, 145 L. Ed. 2d 1060 (2000)).

A plaintiff and the persons with whom he compares
himself are "similarly situated" if they are "prima facie
identical in all relevant respects." Neilson v. D'Angelis, 409
F.3d 100, 104 (2d Cir. 2005) (quoting Purze v. Vill. of Winthrop
Harbor, 286 F.3d 452, 455 (7th Cir. 2002), abrogated on other
grounds, Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008). A
class-of-one plaintiff must show an "extremely high degree of
similarity between themselves and the persons to whom they
compare themselves," Clubside, 468 F.3d at 159, and must
establish that: "(i) no rational person could regard the
circumstances of the plaintiff to differ from those of a
comparator to a degree that would justify the differential
treatment on the basis of a legitimate government policy;" and
"(ii) the similarity in circumstances and difference in
treatment are sufficient to exclude the possibility that the
defendant acted on the basis of a mistake." Neilson, 409 F.3d
at 105; see also Clubside, 468 F.3d at 159. "As a general rule,
whether [individuals] are similarly situated is a factual issue
that should be submitted to the jury." Harlen Assocs. v. Inc.
Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001). "A

court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation, however, where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated." Clubside, 468 F.3d at 159.

With respect to the Equal Protection claims arising out of the 2001 and 2002 Auctions, Plaintiffs argue that they were similarly situated to the other auction participants who were the highest bidders on surplus property because they all: "(1) participated in a public bidding process; (2) bid the highest dollar value for the property; (3) executed a memoranda of sale; (4) provided a 20% down payment; and (5) had their names placed on an omnibus resolution." (Pls.' Mem. 16.) With respect to the claims arising out of the 2004 Auction, Plaintiffs argue that they were similarly situated to all other auction participants.

The Court does not find that there is enough evidence in the record to support the conclusion--necessary to sustain a class-of-one equal protection claim--that Plaintiffs' circumstances are "prima facie identical" to those of all other auction participants "in all relevant respects." Neilson, 409 F.3d at 104. Plaintiffs argue that they were similar to the other auction participants because they were also auction participants. This is insufficient. Toussie, his companies,

and his family members have been targeted by the media with respect to their real estate work (Defs.' 56.1 Stmt. ¶¶ 8, 27-31), have been named as defendants in a class-action lawsuit by homeowners (id. ¶ 15), and have been the subject of complaints to the Legislature by members of the community (id. ¶ 18).[17] Plaintiffs provide no background information regarding any other auction participant to even enable the Court to make such a comparison. As such, they have failed to raise a genuine issue of fact. See Prestopnik v. Whelan, 249 Fed. Appx. 210, 213-14 (2d Cir. 2007) (affirming dismissal of plaintiff's class-of-one equal protection claim because, after claiming that the school district treated her differently from all other candidates for tenure, she introduced no evidence regarding any of the other teachers, leaving the court with no evidence whatsoever to make such a comparison); see also Maulding Dev., L.L.C. v. City of Springfield, 453 F.3d 967, 971 (7th Cir. 2006) (affirming dismissal of class-of-one claim because plaintiff "introduce[d] no evidence regarding any of the other developers, not a single one"). Therefore, with respect to Plaintiffs' equal protection claims, summary judgment is GRANTED, and Count II of the 2001

---

[17] Plaintiffs assert that it is improper to "lump" all of the individual plaintiffs together for the purposes of this analysis. The Court disagrees. The reputation of the Toussie family name is relevant to the Court's analysis of whether there are any similarly situated individuals.

Amended Complaint and Counts III, XX, and XXVI of the 2005 Complaint are DISMISSED.

C.  <u>Due Process</u>

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. CONST. amend. XIV, § 1. To establish a violation of either procedural or substantive due process, Plaintiffs must first identify a valid liberty or property interest. <u>Local 342, Pub. Ser. Emps. v. Town Bd. of Huntington</u>, 31 F.3d 1191, 1194 (2d Cir. 1994); <u>Harlen</u>, 273 F.3d at 503. Only if such an interest exists can there be a due process violation. Therefore, the Court will first address the threshold question of whether Plaintiffs have asserted a deprivation of a recognized liberty or property interest. Then, if deprivation of such an interest exists, the Court will discuss whether that deprivation violates procedural or substantive due process.

1.  <u>Deprivation of Liberty or Property Interest</u>

Plaintiffs assert that the following interests are protected by both procedural and substantive due process: (a) Mr. Toussie's liberty interest in pursuing his chosen occupation (2001 Am. Compl. Count III; 2005 Compl. Counts I, V, XXII, XXVII, XXVIII); (b) all Plaintiffs' liberty interest in entering into contracts (2005 Compl. I, V, XXII, XXVII, XXVIII); (c) Mr.

and Mrs. Toussie's liberty interest in attending events open to the public (2005 Compl. Counts I, V, XXVII, XXVIII); (d) all Plaintiffs' property interest in the parcels for which they entered into memorandum of sale (id. Counts XX, XXVII, XXVIII); and (e) Mr. and Mrs. Toussie's property interest in having the County allow them to sign memoranda of sale (2005 Compl. Counts I, V, XXVII, XXVIII). The Court will address each in turn.

a. <u>Liberty Interest in Pursuing Chosen Profession</u>

Plaintiffs argue that the County violated Mr. Toussie's right to pursue his chosen profession--the buying and selling of property in Suffolk County--by blocking his purchase of auction property and damaging his professional reputation by making false and defamatory statements. While "[a] person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest," <u>Jaeger v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.</u>, No. 96-CV-9336, 1997 WL 625006, at *1 (2d Cir. Oct. 9, 1997) (citing <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)), courts in the Second Circuit have consistently held "one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest." <u>Rodriguez v. Margotta</u>, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (citations omitted); <u>accord</u> <u>Schultz v. Inc.</u>

<u>Vill. of Bellport</u>, No. 08-CV-0930, 2010 WL 3924751, at *7
(E.D.N.Y. Sept. 30, 2010) ("[D]ue process claim based on
infringement of [right to pursue chosen occupation] will succeed
only where a person is blocked from participating in a
particular field.") (citing <u>Conn v. Gabbert</u>, 526 U.S. 286, 291-
92 (1999). <u>Compare</u> <u>Sacco v. Pataki</u>, 114 F. Supp. 2d 264, 273
(S.D.N.Y. 2000) (holding that plaintiffs are not deprived of a
liberty interest because "they cannot have the best job in their
field") <u>and</u> <u>Empire Transit Mix, Inc. v. Giuliani</u>, 37 F. Supp. 2d
331, 336 (S.D.N.Y. 1999) (holding that City terminating
plaintiff's concrete-supply contracts and publishing negative
news report did not constitute deprivation of a liberty interest
even though "a significant part of [plaintiff's] business ha[d]
involved projects for the City"), <u>with</u> <u>Valmonte v. Bane</u>, 18 F.3d
992, 994 (2d Cir. 1994) (finding that plaintiff, whose name was
placed on the central register of Department of Social Services
("DSS") as a suspected child abuser had a legitimate interest in
pursuing her chosen occupation in child care field because all
child care providers must consult the list and she would not be
able to get a job in the child-care field). Mr. Toussie is
still buying and selling property in Suffolk County (Pls.' 56.1
Stmt. ¶ 67);[18] the fact that certain methods of buying property

---

[18] Although Mr. Toussie may be foreclosed from purchasing auction
property in Suffolk County, he is free to purchase property from

may now be precluded does not give rise to a valid liberty interest.[19]

### b.   Liberty Interest in Entering Contracts

Plaintiffs also assert that they had a protected property interest in entering into contracts which the Defendants allegedly violated.  Defendants argue that no such right exists.  The Court agrees.  It is clearly established that "liberty" under the Due Process Clause does not protect "freedom of contract."  See W. Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S. Ct. 578, 81 L. Ed. 703 (1937) ("The Constitution does not speak of freedom of contract."); Planned Parenthood of Se. Penn. v. Casey, 505 U.S. 833, 857, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992) (Rehnquist, J., concurring).

### c.   Liberty Interest in Attending Events Open to the Public

Plaintiffs allege that Defendants violated Mr. and Mrs. Toussie's liberty interest to attend events open to the public by refusing to permit them or their attorney to be present at the public auction.  Defendants assert that no such right exists.  The Court agrees.  Although engaging in

_____

sellers other than Suffolk County.  In fact, in both 2005 and 2006, Mr. Toussie acquired approximately 50 properties and sold approximately 20 properties in Suffolk County. (Defs.' 56.1 Stmt. ¶ 67(c), (f); Pls.' 56.1 Stmt. ¶ 67(c),(f).)
[19] Since the 2001 Complaint's due process claim only asserts a violation of Mr. Toussie's right to pursue his chosen profession, that claim (Count III) does not survive summary judgment and is DISMISSED.

interstate travel and free movement is a protected liberty interest, the Second Circuit has held that "a municipality's decision to limit access to its facilities does not interfere with the right to free movement . . . , and [an individual's] expulsion and temporary exclusion from the [town's community center] did not deprive him of a liberty interest protected by the Due Process Clause." Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).

> d. Property Interest in Parcels to Which Plaintiffs Entered into Memorandum of Sale in 2001 and 2002

Plaintiffs also assert that they have protected property interests. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. "Courts have assessed whether a plaintiff has a clear entitlement to a permit or some other benefit by focusing primarily on the degree of discretion enjoyed by the issuing authority, rather than on the likelihood that the authority will make a specific decision." Muller Tours, Inc. v. Vanderhoef, 13 F. Supp. 2d 501, 506-07 (S.D.N.Y. 1998) (citing Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996)); accord Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) ("Our cases recognize a

benefit is not a protected entitlement if government officials may grant it or deny it at its discretion." (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 462-63, 109 S. Ct. 904, 104 L. Ed. 2d 506 (1989))). "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 918 (2d Cir. 1989); see also Clubside, 468 F.3d at 152-53. A clear entitlement exists only when "the discretion of the issuing agency is so narrowly circumscribed" that approval of a proper application is virtually assured. Gagliardi v. Vill. of Pawling, 18 F.3d 188, 192 (2d Cir. 1994) (internal quotation marks and citation omitted). Thus, "when the relevant authority has broad discretion in its decision-making process, no property interest or entitlement will be found." Muller Tours, 13 F. Supp. 2d at 506-07 (citing Sanitation and Recycling Indus. v. City of N.Y., 107 F.3d 985, 994 (2d Cir. 1998)).

Since the proper focus is "on the degree of official discretion and not on the probability of favorable exercise, the question of whether an applicant has a property interest will normally be a matter of law for the court." RRI Corp., 870 F.2d at 918.

Applying the above standards, Plaintiffs have no "claim of clear entitlement" to the properties for which they entered into memoranda of sale in the 2001 and 2002 Auctions[20] because the County was vested with discretion to decide whether to approve or disapprove the sales.[21] Neither the Suffolk County Administrative Code nor the Terms and Conditions of Sale placed

---

[20] It is unclear whether Plaintiffs are also alleging that the County's alleged breach of the sales contract is a protected property interest. It is of no matter because an alleged breach of an ordinary contract does not rise to the level of a constitutionally protected interest when the party is alleging a breach of an ordinary contract. See, e.g., Local 342, 31 F.3d at 1195; S&D Maintenance Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988) ("[W]henever a person contracts with a state, breach by the state can be considered a denial of his entitlement to performance of the contract. If the concept of 'entitlement' were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.").

[21] Plaintiffs cite to this Court's decision in Alfaro v. Labador, No. 06-CV-1470, 2009 WL 2525128 (E.D.N.Y. Aug. 14, 2009), to support the proposition that the Legislature's decision here was not discretionary. In Alfaro, this Court distinguished between "discretion that is actually exercised on a day-by-day basis" and "decisions that are theoretically discretionary but--as a practical matter--actually depend on de facto standards." 2009 WL 2525128, at *9. However, that case is inapplicable. In Alfaro, this Court was evaluating a class-of-one equal protection claim in light of the then-recent Supreme Court decision in Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008), which barred certain class-of-one claims involving discretionary state action. No court has extended the "de-facto discretionary" standard articulated in Alfaro to the due process context, and the Court declines to do so here. Additionally, the applicability of the de facto discretionary standard to the class-of-one equal protection context is now unclear given the Second Circuit's clarification of the Engquist holding in Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 141-42 (2d Cir. 2010).

any restrictions on the County's authority, and New York courts have held that a legislative body is not required to set standards for areas in which it has full discretion, <u>see</u> <u>Cummings v. Town Bd. of N. Castle</u>, 62 N.Y.2d 833, 834, 466 N.E.2d 147, 477 N.Y.S.2d 607 (1984); <u>Davis v. City of Syracuse</u>, 158 A.D.2d 976, 9767, 551 N.Y.S.2d 128 (4th Dep't 1990).[22]

> ### e. Property Interest in Entering Memoranda of Sale in 2004

However, there may be a legitimate property interest with respect to the 2004 Auction. In 2004, although Mr. and Mrs. Toussie and their attorney were the highest bidders on numerous properties, they were precluded from signing the memoranda of sale. Here, they had a legitimate claim of entitlement.

The Terms and Conditions of Sale for the 2004 Auction state:

> Once a bid is accepted by the auctioneer and the auctioneer has announced that the sale has been completed and finalized, the sale

---

[22] Even if Plaintiffs' interest in the property from the 2001 and 2002 Auctions was a constitutionally protected property interest, Plaintiffs' procedural due process claim would still fail. Plaintiffs had an adequate post-deprivation remedy available to them in the form of an Article 78 proceeding. <u>See</u> <u>Muller Tours</u>, 13 F. Supp. 2d at 506-07; <u>Smith v. O'Connor</u>, 901 F. Supp. 644, 647 (S.D.N.Y. 1995). The fact that Plaintiffs did not challenge the County's decision to disapprove of the auction sales in 2001 is of no avail, because "[a] party's failure to avail itself of an Article 78 proceeding precludes a subsequent Due Process claim. <u>Muller Tours</u>, 13 F. Supp. 2d at 507 (citation omitted).

> of the parcel will be considered <u>FINAL</u>. At
> this time the sale <u>will not</u> be cancelled nor
> rescinded in any manner, under any
> circumstances, except by the County . . . .
> The successful bidder will be required, at
> the time and place of the auction, to sign a
> memorandum of sale pertaining to his or her
> purchase of the parcel.

(Pls.' 56.1 Stmt. Ex. 54.) Once the highest bid has been accepted, the sale is final, and the successful bidder must sign a memorandum of sale. The County does not appear to have any discretion at this stage of the auction process. As such, Mr. and Mrs. Toussie had a legitimate expectation in being able to sign the memoranda of sale.

The Court must now determine whether Defendants' deprivation of that interest violated procedural or substantive due process.[23]

### 2. Procedural Due Process

Having identified a possible deprivation of Mr. and Mrs. Toussie's property interest, to establish a procedural due process violation, Plaintiffs must now show that the deprivation was effected without due process. <u>See</u> <u>Local 342</u>, 31 F.3d at 1194. Due process requires that the state not deprive an

---

[23] Since there is no factual dispute as to whether Plaintiffs have any legitimate liberty or property interest with respect to the County's actions related to the 2001 and 2002 Auctions, the Court GRANTS summary judgment as to the due process claims arising out of those auctions and DISMISSES Count III of the 2001 Amended Complaint and Count XXII of the 2005 Complaint. The only due process claims remaining are those related to the 2004 Auction.

individual of a significant liberty or property interest without affording notice and some opportunity to be heard.  See, e.g., Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 299, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981); Gudema v. Nassau Cnty., 163 F.3d 717, 724 (2d Cir. 1998).  Here, Defendants only state that Plaintiffs had an adequate opportunity to present their position to the Legislature in 2001 and 2002.[24]  There is a genuine issue of fact as to whether Plaintiffs were afforded such an opportunity in 2004.  Therefore, summary judgment with respect to the procedural due process claim arising from the 2004 Auction (2005 Compl. Count I) is DENIED.

   3.   Substantive Due Process

   Having a shown that they had a valid property interest in being able to enter into the sales contract, to establish a violation of substantive due process, Plaintiffs must show that the Defendants infringed that property interest in an arbitrary

---

[24] Defendants also state that "legislative action is not subject to procedural due process." (Defs.' Mem. 16.)  While the statement is correct, if "legislative action" is adjudicative as opposed to legislative, then it is subject to procedural due process requirements.  Legislative action is adjudicative "when a decision is based on a determination of facts about the parties and their activities, businesses, and properties." Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 143 (2d Cir. 1994); accord Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 174 (2d Cir. 2005).  Here, Defendants admit that the decision by the County Legislature was based on their assessment of Mr. Toussie's professional reputation (Defs.' Reply 4), so this line of cases does not bar Plaintiffs' procedural due process claims.

or irrational manner that shocks the conscience. See <u>Harlen</u> <u>Assocs.</u>, 273 F.3d at 503; <u>Clubside</u>, 468 F.3d at 152; <u>Wantanabe</u> <u>Realty Corp. v. City of N.Y.</u>, 315 F. Supp. 2d 375, 392 (S.D.N.Y. 2003). Defendants' only argument is that collateral estoppel precludes Plaintiffs from re-litigating whether the County's actions were arbitrary and capricious. However, this Court already concluded that collateral estoppel does not preclude Plaintiffs from litigating issues related to the 2004 Auction. Defendants have, therefore, failed to meet their burden and summary judgment is DENIED.

D. <u>First Amendment</u>

1. <u>Conduct as Speech</u>

Plaintiffs allege that Defendants violated their right to free speech under the First Amendment when they refused to allow Mr. and Mrs. Toussie to participate in the 2004 Auction. The issue, then, is whether Plaintiffs have a First Amendment right to participate in public auctions that was violated when the County excluded them. To resolve this, the Court must first decide whether participating in a public auction is speech protected by the First Amendment.

Although participating in an auction is not "speech" in the traditional sense, some forms of expressive or symbolic conduct fall within the ambit of the First Amendment. <u>Rumsfeld</u> <u>v. Forum for Academic & Instit. Rights, Inc.</u>, 547 U.S. 47, 66,

41

126 S. Ct. 1297, 164 L. Ed. 2d 156 (2006). "In determining 'whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play,' the Supreme Court asks 'whether an intent to convey a <u>particularized message</u> was present, and whether the <u>likelihood was great</u> that the message would be understood by those who viewed it.'" <u>Young v. N.Y.C. Transit Auth.</u>, 903 F.2d 146, 153 (2d Cir. 1990) (quoting <u>Spence v. Washington</u>, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974)); <u>see also</u>, <u>e.g.</u>, <u>Texas v. Johnson</u>, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (recognizing the expressive nature of burning the American flag by a protestor during a political march); <u>Tinker v. Des Moines Indep. Sch. Dist.</u>, 393 U.S. 503, 505, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969) (recognizing expressive nature of school students wearing black arm bands in protest of Vietnam War). Plaintiffs do not assert that their participation in the auction was "inseparably intertwined with a particularized message." See <u>Young</u>, 903 F.2d at 153. In fact, they fail to assert that their participation in the auction conveyed <u>any</u> message.

Rather, Plaintiffs argue that their conduct deserves First Amendment protection merely because it occurred in a public forum. This is a misstatement of the law. First the Court must determine whether the conduct in question is protected speech. <u>Cornelius v. NAACP Legal Def. & Educ. Fund,</u>

Inc., 473 U.S. 788, 797, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985). Only if the activity falls within the bounds of the First Amendment will the Court identify the nature of the forum in which the activity took place. Id. The forum is relevant because the extent to which the government may limit speech depends on whether the forum is public or private. Id. Since here, the activity in question is not constitutionally-protected "expressive conduct," the Court need not determine whether the auction occurred in a public forum. See id. ("[W]e must first decide whether solicitation . . . is speech protected by the First Amendment, for, if it is not, we need go no further."). Since the conduct is not protected by the First Amendment, the Court's inquiry ends.

Therefore, the Court GRANTS summary judgment with respect to Plaintiffs' claim that Defendants' prohibiting Mr. and Mrs. Toussie from participating in the auction violated their First Amendment rights, and Count VII of the 2005 Complaint is DISMISSED.

### 2. Intimate Association

Plaintiffs allege that the County violated their First Amendment right to intimate association when it took adverse action against Plaintiffs based on Isaac's, and to a lesser extent Toussie's, alleged misconduct. "The right to intimate association protects the close ties between individuals from

inappropriate interference by the power of the state." Chi Iota Colony of Alpha Epsilon Phi Fraternity v. C.U.N.Y., 502 F.3d 136, 143 (2d Cir. 2007) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 619, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)). "To determine whether a governmental rule unconstitutionally infringes on an associational freedom, courts balance the strength of the associational interest in resisting governmental interference with the state's justification for the interference." Id.

Defendants do not dispute that the relationship between Mr. and Mrs. Toussie and their son is a protected relationship. See Patel v. Searles, 305 F.3d 130, 136 (2d Cir. 2002) (recognizing that parent-child relationship is a constitutionally protected "intimate" relationship); Sutton v. Vill. of Valley Stream, N.Y., 96 F. Supp. 2d 189, (E.D.N.Y. 2000) (same).[25] Rather, Defendants argue that Plaintiffs' intimate association claims must fail because Defendants' alleged retaliation against Plaintiffs was not related to Toussie or Isaac's exercise of his First Amendment rights. In other words, the alleged retaliation was "in response to Isaac's criminal acts and . . . [D]efendants' perception that Toussie

---

[25] It is not alleged that Plaintiffs Toussie Land Acqusition & Sales Corporation and Toussie Development Corporation had any right to intimate association that was violated by Defendants. These companies are neither owned nor operated by Mr. Toussie or any member of his family. (Pls.' Opp'n 2.)

also engaged in questionable conduct" (Defs.' Mem. 18), not because either Toussie or Isaac engaged in protected speech. This is an incorrect statement of the law.

In support of their position, Defendants cite Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999) and Sacay v. Research Foundation of C.U.N.Y., 193 F. Supp. 2d 611 (E.D.N.Y. 2002). Although there may have been speech or conduct worthy of First Amendment protection in both Adler, 185 F.3d at 44 (husband terminated from state job after wife filed suit against the state), and Sacay, 193 F. Supp. 2d at 634-35 (daughter demoted and transferred after filing letter in support of mother's ADA claim), neither case stated that protected speech was required to state an intimate association claim. The First Amendment right that is implicated in an intimate association claim is the associational right, not free speech. Contrary to Defendants' assertion, one can state a claim for violation of the right to intimate association without alleging that there was any constitutionally protected speech.[26]

---

[26] For example, in Patel, 305 F.3d at 135-38, the Second Circuit upheld the denial of a motion to dismiss an intimate association claim even though it involved no constitutionally protected speech. The Second Circuit held that the police giving a suspect's family false and defamatory information about the suspect during a murder investigation to create enough hostility within the family to elicit a false accusation against the suspect stated a claim for violation of the suspect's right of intimate association.

The only issue, then, is whether the deprivation of Plaintiffs' right of intimate association with Isaac is outweighed by the County's reasons for disapproving the sales to Plaintiffs in 2001 and 2002 and prohibiting Mr. and Mrs. Toussie's involvement in the 2004 Auction. The Court finds that reasonable jurors would disagree as to whether the balance weights in Defendants' favor; therefore, summary judgment with respect to the intimate association claims is DENIED.

### 3. Retaliation

Plaintiffs assert that the Defendants retaliated against them for exercising their First Amendment right to petition by disapproving the sales to Plaintiffs after the 2002 Auction and by not allowing Mr. and Mrs. Toussie to participate in the 2004 Auction. The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." Williams, 535 F.3d at 76. When, as here, the plaintiff is "a private citizen who sued a public official," the Second Circuit has required the plaintiff "to show: '(1) [the plaintiff] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" Williams, 535 F.3d at 76 (alteration in the original) (quoting Curley v. Vill. of Suffern, 268 F.3d

65, 73 (2d Cir. 2001)); accord Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (noting that a "private citizen" bringing a First Amendment retaliation claim must satisfy the three-pronged test set forth in Curley); Butler v. City of Batavia, 323 Fed. Appx. 21, 23 (2d Cir. 2009) (applying the Curley test); Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (same).

Defendants argue that they are entitled to judgment as a matter of law because Plaintiffs' lawsuits are matters of public concern, and therefore are not protected by the First Amendment. However, as Plaintiffs correctly assert, this is the standard governing retaliation claims by public employees, not private citizens. Since none of the Plaintiffs were public employees when they filed the 2001 Complaint or the Article 78 proceeding, their lawsuits need not have been related to a matter of public concern for them to fall within the protection of the First Amendment for the purposes of this action. See Williams, 535 F.3d at 77.

Nonetheless, the Court still finds that Defendants are entitled to judgment as a matter of law because Plaintiffs have failed to show how Defendants' action "chilled" the exercise of their First Amendment rights. "[P]laintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right." Id. at 78 (citing Columbo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002)).

To prove this deprivation, Plaintiffs must come forward with evidence showing either that (1) Defendants silenced them or (2) "[D]efendant[s'] actions had some actual, non-speculative chilling effect" on his speech. Id.; accord Spear v. Town of W. Hartford, 954 F.2d 63, 67-68 (2d Cir. 1992) (requiring plaintiff to show that defendants "inhibited him in the exercise of his First Amendment freedoms"). Plaintiffs have not alleged any facts indicating that Defendants have deprived them of their constitutionally protected right to free speech, chilled their speech or otherwise prevented them from speaking.[27] Therefore, the Court GRANTS summary judgment with respect to Plaintiffs' First Amendment retaliation claims and Counts IX and XXI of the 2005 Complaint are DISMISSED.

E. Claims Against Individual Defendants

1. Section 1983 Conspiracy Claims

Plaintiffs allege, pursuant to § 1983, that Sabatino, Zielinski and Isles conspired to violate Plaintiffs' rights to procedural and substantive due process (2005 Compl. Counts II, VI), equal protection (id. Count IV), free speech under the First Amendment (id. Counts VIII, X) and intimate association (id. Count XII) with respect to the 2004 Auction.

---

[27] Even if Defendants' actions dissuaded Plaintiffs from participating in future auctions (which they did not (Pls.' 56.1 Supp. ¶ 40)), the Court has already concluded that participating in auctions and purchasing property in this context is not expressive conduct worthy of First Amendment protection.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

As a threshold matter, Plaintiffs must establish that the underlying constitutional rights were violated to succeed on their conspiracy claims. See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (explaining that a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right"); see also D'Angelo-Fenton v. Town of Carmel, 470 F. Supp. 2d 387, 397 (S.D.N.Y. 2007); Schultz v. Inc. Vill. of Bellport, No. 08-CV-0930, 2010 WL 3924751, at *10-11 (E.D.N.Y. 2010). The Court has already concluded that Plaintiffs have failed to establish their equal protection, free speech and retaliation claims with respect to the 2004 Auction, therefore the conspiracy claims related to those alleged violations fail as a matter of law and Counts IV, VIII and X of the 2005 Complaint are DISMISSED.

Additionally, Defendants argue that the intra-corporate conspiracy doctrine bars all Plaintiffs' § 1983 conspiracy claims. The Court agrees. "The intra-corporate

conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Daniel v. Long Island Hous. P'ship, Inc., No. 08-CV-1455, 2009 WL 702209, at *9 (E.D.N.Y. Mar. 13, 2009). Plaintiffs do not dispute that the individual Defendants are all employees of the County but instead argue that Zielinski, Isles and Sabatino were acting outside the scope of their employment when they instructed the auctioneer at the 2004 Auction to ignore Mr. and Mrs. Toussie's bids and then directed Suffolk police to remove them from the auction.

In order to show that Defendants acted outside the scope of their employment, Plaintiffs must show that Zielinski, Isles and Sabatino were "'acting in their personal interests, wholly and separately from the corporation'" or municipal entity. Daniel, 2009 WL 702209, at *9 (quoting Bhatia v. Yale Univ., No. 06-CV-1769, 2007 WL 2904205 (D. Conn. Sept. 30, 2007)). Plaintiff, however, has failed to provide any evidence to suggest that they were motivated by independent personal interests, separate and apart from the interests of the County. Plaintiffs state in their opposition that "[f]act questions abound regarding the individual Defendants' personal stake in their discriminatory conduct toward Toussie" (Pls.' Opp'n 22) yet cite to five paragraphs of their 56.1 Statement that discuss

the actions of the "County": "the County refused to allow [Toussie] to sign a contract" (Pls.' 56.1 Supp. ¶ 32); "Nolan told Toussie that the County would not sell him any properties" (id.); "[t]he County refused to accept the down payment plus auction fee" (id. ¶ 34); and "[t]he County's decision to ignore bids from Toussie, his wife, and his attorney was based on the prior litigation history with Toussie and Plaintiffs and to avoid discomfort to the public" (id. ¶ 35). Although these paragraphs also reference actions of Isles, Zielinski and Sabatino, there is no evidence in the record that shows that those actions were motivated by anything other than the interests of the County, nor is there any evidence suggesting what their alleged "personal stake" in the discriminatory conduct is. See Daniel, 2009 WL 702209, at *9; Little v. City of N.Y., 487 F. Supp. 2d 426, 441-442 (S.D.N.Y. 2007). Such unsupported allegations will not defeat summary judgment. See Weinstock, 224 F.3d at 41. Therefore, the Court GRANTS summary judgment with respect to all of Plaintiffs' § 1983 conspiracy claims.

2.    Remaining Underlying Constitutional Violations Allegedly Committed by Individual Defendants

The Court has already determined that Defendants are entitled to summary judgment as to the majority of the claims

against the individual Defendants.[28]  The only claims remaining are against Isles, Sabatino and Zielinski for violating Plaintiffs rights to procedural and substantive due process and intimate association at the 2004 Auction.

Although the procedural and substantive due process claims arising out of the 2004 Auction survived summary judgment, the claims must be dismissed as against the individual Defendants because Plaintiffs have failed to allege any specific acts committed by Isles, Zielinski or Sabatino that give rise to a constitutional violation.  See Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005) ("Before § 1983 damages are awarded, a plaintiff must show by a preponderance of the evidence that the defendant was personally involved--that is, he directly participated--in the alleged constitutional deprivations."); Ricioppo v. Cnty. of Suffolk, No. 04-CV-3630, 2009 WL 577727, at

_____

[28] Plaintiffs brought claims against Gaffney individually for violating their right to procedural due process with respect to the 2001 Auction (2001 Am. Compl. Count III); and against Isles, Sabatino and Zielinski individually for violating their rights to procedural and substantive due process (2005 Compl. I, V), equal protection (id. Count III), free speech (id. Counts VII, IX), and intimate association (id. Count XI) with respect to the 2004 Auction.  The Court has already determined that Defendants are entitled to summary judgment as to the procedural due process claim arising out of the 2001 Auction because Plaintiffs failed to state a cognizable liberty interest.  That being the only claim against Gaffney individually, he is awarded full summary judgment.  Of the claims arising out of the 2004 Auction, this Court already has determined that the equal protection, free speech and retaliation claims fail as a matter of law.

*8 (E.D.N.Y. Mar. 4, 2009) ("In order to make a claim for individual liability under § 1983, there must be personal involvement." (citing Patterson v. Cnty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004))).

Plaintiffs allege that Suffolk County Police escorted Mr. and Mrs. Toussie out of the auction room at the direction of Isles, Zielinski, and Sabatino (Pls.' 56.1 Supp. ¶¶ 33, 35); however, the Court has already determined that Mr. and Mrs. Toussie do not have a protected liberty interest in attending events open to the public. Plaintiffs have a protected property interest in signing memoranda of sale for the parcels for which they are the highest bidder, yet Plaintiffs state that Assistant County Attorney George Nolan instructed the auctioneers not to accept any bids from Mr. or Mrs. Toussie and "[t]he County refused to accept the down payment plus auction fee, and refused to allow Mr. Hamburger to sign the memoranda of sale on behalf of Toussie for those parcels for which he was the winning bidder" (id. ¶ 34 (emphasis added)). Since there are no factual allegations linking any of the individual Defendants to the alleged procedural and substantive due process violations, those claims as against Isles, Sabatino and Zielinski must be DISMISSED.

Plaintiffs do, however, allege specific facts linking Isles, Sabatino and Zielinski to the intimate association claim

arising out of their conduct at the 2004 Auction. The individual Defendants are entitled to summary judgment, nonetheless, on the basis of qualified immunity.

### 3.    Qualified Immunity

"Under qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Faghri v. Univ. of Conn.</u>, 621 F.3d 92, 96 (2d Cir. 2010) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

Plaintiffs state that qualified immunity doctrine does not apply because the individual Defendants were not performing discretionary functions when they "barred Toussie's bids and exiled him and his wife from the 2004 Auction grounds" (Pls.' Opp'n 23). The Court disagrees. While, as Plaintiffs correctly assert, qualified immunity only applies where a government official performs a discretionary, as distinct from a ministerial function, <u>see</u> <u>Walz v. Town of Smithtown</u>, 46 F.3d 162, 169 (2d Cir. 1995), this ministerial-duty exception only "applie[s] when a government employee has a duty to perform a ministerial task and refuses to do so." <u>See</u> <u>D'Agostino v. N.Y. Liquor Auth.</u>, 913 F. Supp. 757, 767 (W.D.N.Y. 1996) (citing

Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 113 S. Ct. 2167, 124 L. Ed. 2d 810 (1995)) (court reporter failed to comply with duty to provide convicted criminal defendant with transcript); Walz, 46 F.3d at 169 (town highway superintendent refused to issue excavation permit to allow homeowners to obtain water service, despite his complete lack of discretion to deny permit under town code)).  Plaintiffs, on the other hand, do not argue that Isles, Zielinski and Sabatino failed to act when they had a duty to do so but rather argue that the individual Defendants acted outside the scope of their discretion.  This is not the standard.[29]

The issue, then, is whether Plaintiffs' right to intimate association was "clearly established" when the individual Defendants had Mr. and Mrs. Toussie escorted out of the 2004 Auction.  "In this Circuit 'a right is clearly established' if it meets the following three-part test: '(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.'"  Talley v. Brentwood Union Free Sch. Dist., 728 F. Supp. 2d 226, 234-35 (E.D.N.Y. 2010) (citing

---

[29] It is worth noting that the ministerial-duty exception itself is extremely narrow, and the Second Circuit has questioned the validity of the ministerial-discretionary function distinction. See Varrone v. Bilotti, 123 F.3d 75, 82 (2d Cir. 1997).

Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004)).  Although both the Supreme Court and the Second Circuit have recognized a right of intimate association, the parameters of that right are anything but clear.  See Poleo-Keefe v. Bergeron, No. 06-CV-0221, 2008 WL 3992636, at *9 (D. Vt. Aug. 28, 2008) ("[B]oundaries of right of freedom of intimate association are largely unsettled and the Second Circuit has declined to articulate the level of review due to actions that infringe upon it.  The contours of the right . . . are not sufficiently clear to enable a reasonable official to understand what actions would violate the right."); see also Sacay, 193 F. Supp. 2d at 635; Sutton, 96 F. Supp. 2d at 194.  Burdens of intimate association have been held constitutional where the government's interests have been strong enough and unconstitutional where the government's interest was insufficient.  See Talley, 728 F. Supp. 2d at 237 (collecting cases).  A reasonable defendant would not have understood that escorting Mr. and Mrs. Toussie out of a public auction deprived them of their right to intimate association; therefore, the individual Defendants are entitled to judgment as a matter of law.  All claims against the individual Defendants are DISMISSED.

IV.  <u>State Law Claims</u>

A.  <u>Breach of Contract</u>

Plaintiffs also assert state law breach of contract claims with respect to the 2001, 2002 and 2004 Auctions. Defendants state that Plaintiffs are collaterally stopped from bringing all contract claims.  The Court will address the claims arising out of each auction in turn.

1.  <u>2001 Auction</u>

With respect to the 2001 Auction, Plaintiffs allege that the County breached the Memorandum of Sale by disapproving the sale in bad faith and in violation of the law.  (2001 Am. Compl. ¶¶ 84-85.)  However, "[w]ithout a contract there can be no breach," <u>see</u> <u>Franklin v. Carpinello Oil Co., Inc.</u>, 84 A.D.2d 613, 613, 444 N.Y.S.2d 248, 249 (3rd Dep't 1981), and New York courts have consistently held that where, as here, the terms and conditions of a public sale explicitly state that the contract of sale is subject to approval by the Legislature, that "no valid contract to convey title . . . could exist without the approval of the County Legislature."  <u>See</u> <u>Kigler v. Cnty. of Rockland</u>, 186 A.D.2d 787, 789, 589 N.Y.S.2d 86, 87 (2d Dep't 1992) (citing <u>Orelli v. Ambro</u>, 41 N.Y.2d 952, 394 N.Y.S.2d 636, 363 N.E.2d 360 (1997); <u>Min-Lee Assocs. v. City of N.Y.</u>, 27 N.Y.2d 790, 315 N.Y.S.2d 853, 264 N.E.2d 346 (1970)); <u>see</u> <u>also</u> <u>Toussie v. Cnty. of Suffolk</u>, No. 03-9048 (N.Y. Sup. Ct. Suffolk

Cnty. Sept. 23, 2003) ("[W]here, as here, the terms of notices of sale so provide, no valid contract to convey title to real property can exist without the approval of the municipality.").[30] Since here the Legislature did not approve the sale, there is no valid contract and no breach.

Plaintiffs' claim for breach of implied contract also fails as a matter of law. Plaintiffs assert that "[a]lthough Suffolk County retained the right to decline sales in its discretion, Suffolk County did not retain the right to exercise that discretion arbitrarily, capriciously, in bad faith or in violation of the law. By accepting these terms and conditions, Robert Toussie formed an implied contractual relationship with the County." (2001 Am. Compl. ¶ 79.) New York courts recognize an implied covenant of good faith and fair dealing in every contract. See Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933) (citations omitted). However, no breach of that covenant will exist without the existence of a valid contract from which such a duty would arise. See Keefe v. N.Y. Law Sch., 71 A.D.3d 569, 897 N.Y.S.2d

---

[30] While the Article 78 proceeding and state court decision do not collaterally estop Plaintiffs from asserting breach of contract claims arising out of the 2001 Auction, the decision is still valid law and persuasive authority. See Hampton Heights Dev. Corp. v. Bd. of Water Supply of Utica, 136 Misc. 2d 906, 911-12, 519 N.Y.S.2d 438, 442 (Sup. Ct. Oneida Cnty. 1987) (recognizing and explaining difference between collateral estoppel and precedential or persuasive authority).

94 (1st Dep't 2010); <u>Schorr v. Guardian Life Ins. Co. of Am.</u>, 44 A.D.3d 319, 319, 843 N.Y.S.2d 24, 25 (1st Dep't 2007); <u>American-European Art Assoc. v. Trend Galleries</u>, 227 A.D.2d 170, 641 N.Y.S.2d 835 (1st Dep't 1996). The Court has already determined that there is no valid contract here; therefore, Defendants are entitled to summary judgment with respect to both breach of contract claims arising out of the 2001 Auction and Counts IV and V of the 2001 Amended Complaint are DISMISSED.

### 2. <u>2002 Auction</u>

Plaintiffs' contract claim arising out of the 2002 Auction is similar: that Defendants breached the memoranda of sale by disapproving the sales in bad faith. (2005 Compl. ¶¶ 285, 287.) However, this claim is barred by collateral estoppel. The Supreme Court, New York County, held that there was no valid contract and the Legislature's disapproval was within the clear letter of the contract language. <u>See Toussie v. Cnty. of Suffolk</u>, No. 03-9048 (N.Y. Sup. Ct. Suffolk Cnty. Sept. 23, 2003). Plaintiffs will not be allowed to re-litigate those issues here. Therefore, summary judgment is GRANTED with respect to Count XXIV of the 2005 Complaint.

### 3. <u>2004 Auction</u>

Plaintiffs' contract claims arising out of the 2004 Auction are different. Plaintiffs claim that contracts were formed when "Toussie or his agent made offers, which Suffolk

County accepted when the gavel fell and Mr. Toussie was identified as the highest bidder" and the County breached those by refusing to allow Toussie or his agent to sign the memoranda of sale for the parcels for which he was the highest bidder. (2005 Compl. ¶ 219.) Plaintiffs also claim that an implied contract was formed when "having obtained written confirmation from the County that he would not be barred from public auctions, and by entering into the Suffolk County auction process in 2004, Robert Toussie accepted the terms and conditions of Suffolk County that if Robert Toussie was the high bidder at the auction for a given parcel, the County would enter into a memorandum of sale reflecting his purchase of the parcel subject to the attached terms of sale." (Id. ¶ 224.)

Defendants raise two defenses: (i) statute of frauds and (ii) collateral estoppel. Both defenses fail. Defendants assert that these contracts are barred by New York's Statute of Frauds; however, Defendants waived any statute of frauds defense when they failed to assert it in their Amended Answer. See Lawrence Intern. Corp. v. N.Y. Pops, No. 91-CV-3112, 1992 WL 123175, at *4 (S.D.N.Y. May 27, 1992) ("Whatever the merits of defendants' statute of fraud defense, defendants waived that defense by failing to include it in their answer."); see also United States v. Cont'l Ill. Nat. Bank & Trust of Chi., 889 F.2d 1248, 1253 (2d Cir. 1989) ("[F]ailure to plead an affirmative

defense results in waiver of that defense and its exclusion from the case." (citation omitted)).  Additionally, as previously explained, collateral estoppel does not bar these claims.

The Court is skeptical as to whether the facts support Plaintiffs' breach of contract claims arising out of the 2004 Auction; however, the Court DENIES summary judgment because Defendants have failed to meet their burden of showing that there are no material factual issues and that they are entitled to judgment as a matter of law.

B.    Unjust Enrichment

Plaintiffs claim that Defendants were unjustly enriched when they allowed Mr. Toussie to bid repeatedly at the 2002 and 2004 Auctions, thus driving up the final sale price, knowing that the County would not approve the sales.  (2005 Compl. Counts XVI, XXV.)  Under New York law, to prevail on an unjust enrichment claim, "[a] plaintiff must show that (1) the other party was enriched, (2) at [plaintiff]'s expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1110, 919 N.Y.S.2d 465 (2011) (citing Citibank, N.A. v. Walker, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48 (2d Dep't 2004); Baron v. Pfizer, Inc., 42 A.D.3d 627, 629-630, 840 N.Y.S.2d 445 (3d Dep't 2007)).  Defendants do not dispute that

Mr. Toussie's bids drove up the final sale price, thus enriching Defendants. Rather, Defendants argue that the County was enriched at the expense of the winning bidders, not Mr. Toussie. The Court agrees.

Enrichment is "at Plaintiff's expense" if "defendant received something of value which belongs to the plaintiff." Bazak Int'l Corp. v. Tarrant Apparel Group, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004) (quoting 22A N.Y. Jur. 2d. Contracts § 515) (interpreting New York law); accord McGrath v. Hilding, 41 N.Y.2d 625, 629, 363 N.E. 2d 328, 330, 394 N.Y.S.2d 603, 606 (1977); Clifford R. Gray, Inc. v. LeChase Const. Services, L.L.C., 31 A.D.3d 983, 988, 819 N.Y.S.2d 182, 187 (3d Dep't 2006) (dismissing unjust enrichment claim because "plaintiff assert[ed] no facts suggesting that defendant [wa]s in possession of money or property belonging to plaintiff"). Here, Plaintiffs have not pointed to any facts suggesting that the County "received something of value" from Mr. Toussie. They merely state that "[t]he evidence shows otherwise" and cite to a paragraph of their 56.1 Statement describing the current status of Mr. Toussie's business. (Pls.' Opp'n 24.) This has nothing to do with whether the County unjustly retained money or property belonging to Plaintiffs and thus will not defeat summary judgment.

C.   <u>Defamation</u>

Plaintiffs' also fail to defeat summary judgment with respect to their defamation claim. Plaintiffs assert that Defendant Isles' statement to a Newsday reporter that "Suffolk County police asked [Toussie] to leave the auction because he was being disruptive" is defamatory. (2005 Compl. ¶¶ 234-239.) For a defamatory statement to be actionable under New York law, "it must either cause special harm or constitute defamation per se." <u>Peters v. Baldwin Union Free Sch. Dist.</u>, 320 F.3d 164, 169 (2d Cir. 2003) (citing <u>Dillon v. City of N.Y.</u>, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)).

Special harm is the "loss of something having economic or pecuniary value" and "must be fully and accurately identified." <u>Liberman v. Gelstein</u>, 80 N.Y.2d 429, 434-35, 605 N.E.2d 344, 347, 590 N.Y.S.2d 857, 860 (1992) (citation omitted); <u>Matherson v. Marchello</u>, 100 A.D.2d 233, 234, 473 N.Y.S.2d 998, 1000-01 (2d Dep't 1984). Plaintiffs assert that "Mr. Toussie's reputation was injured" (2005 Compl. ¶ 239), presumably, although it is not clear from the pleadings, resulting in a loss of business. However, "[w]hen loss of business is claimed, the person[s] who ceased to be customers must be named and the losses itemized." <u>Matherson</u>, 100 A.D.2d at 234, 473 N.Y.S.2d at 1001 (citations omitted). Plaintiffs do no more than conclusorily state that Mr. Toussie's reputation

was damaged; such unsupported allegations that his business may have suffered as a result will not defeat summary judgment. See Weinstock, 224 F.3d at 41.

The statement is also not defamatory per se. A statement is defamatory per se if it asserts that the plaintiff committed a serious crime or tends to injure the plaintiff in his trade, business or profession.[31] See Albert v. Loksen, 239 F.3d 256, 271 (2d Cir. 2001) (citing Liberman, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857). Defendant Isles' statement claiming Toussie was "being disruptive" does not charge him with committing a serious crime, because "[u]nder New York Law disorderly conduct is a violation . . . and do[es] not constitute [defamation] per se." Ferlito v. Cnty. of Suffolk, 06-CV-5708, 2007 WL 4180670, at *5 (E.D.N.Y. Nov. 19, 2007). Additionally, the statement does not injure Mr. Toussie in his trade, business or profession. To do so, the statement must be "of a kind incompatible with the proper conduct of the business, trade, profession or office itself. The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon plaintiff's character or qualities." Liberman, 80 N.Y.2d at

_____

[31] A statement can also be defamatory per se if it implies that the plaintiff has a loathsome disease or imputes unchastity to a woman. See Liberman, 80 N.Y.2d at 435, 606 N.E.2d at 347-48, 590 N.Y.S.2d at 860.

436, 605 N.E.2d at 348, 590 N.Y.S.2d at 861 (internal citations and quotations omitted) (statement that landlord threatened to kill a tenant did not injure landlord's business as a property owner); see also Ferlito, 2007 WL 4180670, at *5 (statement that plaintiff has a history of disorderly conduct and resisted arrest was not defamatory per se because it was not related to his status as an attorney). Defendant Isles' statement is unrelated to Mr. Toussie's status as a real estate investor, and, therefore, does not qualify as defamation per se. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' defamation claim and Count XVIII of the 2005 Complaint is DISMISSED.

D.   Suffolk County Administrative Code

Plaintiffs also assert that Defendants violated Suffolk County Administrative Code § 42-4 (formerly § A14-30), which states that "the Commissioner . . . shall take such measures as shall be necessary and appropriate to expedite the offering for sale of such parcels to the highest bidder at public auction." Defendants argue that Plaintiffs' claim must be dismissed because there is nothing in the language of the County Administrative Code provision that creates a private right of action. The Court agrees.

"Where, as here, a statute does not expressly authorize a private right of action, '[o]ne may be fairly

implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the governing statute; and (3) to do so would be consistent with the legislative scheme.  Bhandari v. Isis, 45 A.D.3d 619, 621, 846 N.Y.S.2d 226, 269 (2d Dep't 2007) (alteration in original) (quoting Pelaez v. Seide, 2 N.Y.3d 186, 200, 810 N.E.2d 393, 400, 778 N.Y.S.2d 111, 118 (2004)).  A review of the relevant provisions of the Administrative Code indicates that the Legislature did not intend to create a private cause of action. The provision in question was enacted to assist the County in disposing of surplus property, not to protect purchasers of surplus property.  Plaintiffs, without providing any factual or legal support, ask the Court to reject Defendants' theory.  Such conclusory allegations will not defeat summary judgment.  See Williams, 781 F.2d at 323.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, summary judgment is GRANTED in full for the individual Defendants Gaffney, Zielinski, Isles and Sabatino. Suffolk County is awarded summary judgment on (1) all equal protection claims (2001 Am Compl. Count II; 2005 Compl. Count III, XX, XXVI); (2) the procedural due process claims arising

out of the 2001 and 2002 Auctions (2001 Am. Compl. III, XXII); (3) the First Amendment freedom of speech claim (2005 Compl. Count VII); (4) all First Amendment retaliation claims (id. Count IX, XXI); (5) the bill of attainder claim arising out of the 2004 Auction (2005 Compl. Count XIII); (6) the contract claims arising out of the 2001 and 2002 Auctions (2001 Am. Compl. Counts V, VI; 2005 Compl. Count XXIV); (7) all unjust enrichment claims (2005 Compl. Counts XVI, XXV); (8) the defamation claim (id. Count XVII); and (9) the violation of the Suffolk County Administrative Code (id. Count XVIII).

Plaintiffs may proceed to trial only against Suffolk County and only with respect to (1) the bill of attainder claims arising out of the 2001 and 2002 Auctions (2001 Am. Compl. Count I; 2005 Compl. Counts XIX, XXIX); (2) the intimate association claims (2001 Am. Compl. IV; 2005 Compl. Counts XI, XXIII); (3) the procedural and substantive due process claims related to Mr. and Mrs. Toussie's protected property interest arising out of the 2004 Auction (2005 Compl. Counts I, V, XXVII, XXVIII); and (4) the breach of contract claims arising out of the 2004 Auction (id. Counts XIV, XV).

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    August 2, 2011
          Central Islip, New York