FILED
CLERK

9/6/2012 1:23 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
ROBERT I. TOUSSIE and
CHANDLER PROPERTY, INC.,

                    Plaintiffs,             <u>MEMORANDUM & ORDER</u>
                                            01-CV-6716(JS)(ARL)

        -against-

COUNTY OF SUFFOLK, ROBERT J. GAFFNEY,
individually, and in his official
capacity as Suffolk County Executive,
ALLEN GRECCO, and PEERLESS ABSTRACT
CORP.,

                    Defendants.
---------------------------------------X
ROBERT I. TOUSSIE, LAURA TOUSSIE,
ELIZABETH TOUSSIE, MICHAEL I. TOUSSIE,
PRAND CORP. f/k/a CHANDLER PROPERTY,
INC., ARTHUR A. ARNSTEIN CORP.,
TOUSSIE LAND ACQUISITION & SALES CORP.,
and TOUSSIE DEVELOPMENT CORP.,        05-CV-1814(JS)(ARL)

                    Plaintiffs,

        -against-

COUNTY OF SUFFOLK,

                    Defendant.
---------------------------------------X
APPEARANCES
For Plaintiffs:               Abbe David Lowell, Esq.
                              Chadbourne & Parke, LLP
                              1200 New Hampshire Avenue NW
                              Washington, DC 20036

                              Scott S. Balber, Esq.
                              Emily Abrahams, Esq.

Jeffrey Carson Pulley, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

For Suffolk County:        Arlene S. Zwilling, Esq.
                           John Richard Petrowski, Esq.
                           Chris P. Termini, Esq.
                           William G. Holst, Esq.
                           Suffolk County Attorney's Office
                           P.O. Box 6100
                           H. Lee Dennison Building-5th Floor
                           100 Veterans Memorial Highway
                           Hauppauge, NY 11788

SEYBERT, District Judge:

Presently pending before the Court is Plaintiff Robert I. Toussie's ("Toussie") motion for attorney's fees. For the following reasons, Toussie's motion is DENIED.

<u>BACKGROUND</u>

Plaintiffs Toussie and Chandler Property, Inc. commenced this action (No. 01-CV-6716) in October 2001, asserting that their civil rights had been violated when the Defendants Suffolk County (the "County") and Robert J. Gaffney denied them the opportunity to purchase thirty-one parcels of real estate at the 2001 Suffolk County Surplus Auction (the "2001 Auction"). (Petrowski Decl. Ex. A, hereinafter the "2001 Amended Complaint.") The 2001 Amended Complaint asserted eight separate causes of action against these Defendants arising out of the 2001 Auction: claims under 42 U.S.C. § 1983 for an

2

unconstitutional bill of attainder (2001 Am. Compl. Count I), violations of equal protection and due process (id. Counts II-III), and denial of Toussie's First Amendment right to intimate association (id. Count IV), as well as state common law breach of contract and tortious interference claims (id. Counts V-VI, XI-XII).  The 2001 Amended Complaint also asserted four common law causes of action against Allen Grecco and Peerless Abstract Corp. for breach of contract (id. Count VII), breach of fiduciary duty (id. Count VIII), an accounting (id. Count IX), and tortious interference (id. Count X).  Plaintiffs sought relief in the form of:  (1) an order of specific performance directing the County to convey to Plaintiffs the thirty-one parcels for which they were the highest bidders at auction or, in the alternative, damages in an amount equal to the lost profits from the development, sale, and/or rental of the thirty-one parcels (approximately $5.3 million), and (2) damages equal to the lost profits from the termination of a line of credit by Safra Bank (approximately $30 million).  (See Joint Pre-Trial Order ("JPTO") at 7; Pl. Damages Stmt. ¶¶ 1-2, 7.)

In April 2005, those plaintiffs, joined by Laura Toussie, Elizabeth Toussie, Michael I. Toussie, Prand Corp. f/k/a Chandler Property, Inc., Arthur A. Arnstein Corp., Toussie Land Acquisition and Sales Corp., and Toussie Development Corp. (collectively, "Plaintiffs"), commenced a second action (No. 05-

3

CV-1814) asserting similar claims under 42 U.S.C. § 1983. (Petrowski Decl. Ex. B, hereinafter the "2005 Complaint.") The 2005 Complaint alleged that Defendants Suffolk County, Paul Sabatino, II, Patricia B. Zielinski, and Thomas A. Isles violated Plaintiffs' civil rights when they blocked the sale of sixteen parcels at the 2002 Suffolk County Surplus Auction (the "2002 Auction"), rejected Toussie's highest bids at the 2004 Suffolk County Surplus Auction (the "2004 Auction"), and had police escort Toussie and his wife from the 2004 Auction. With respect to the 2002 Auction, the 2005 Complaint asserted claims under Section 1983 for an unconstitutional bill of attainder (2005 Compl. Count XIX), violations of equal protection and procedural due process (id. Counts XX, XXII), denial of Plaintiffs' First Amendment right to intimate association (id. Count XXIII), retaliation in violation of the First Amendment (id. Count XXI), as well as state common law breach of contract and unjust enrichment claims (id. Counts XXIV, XXV). With respect to the 2004 Auction, the 2005 Complaint asserted claims under Section 1983 for an unconstitutional bill of attainder (id. Count XIII), violations of equal protection and substantive and procedural due process (id. Counts I, III, V), violations of Plaintiffs' First Amendment right to free speech and intimate association (id. Counts VII, XI), retaliation in violation of the First Amendment (id. Count IX), conspiracy to violate

4

Plaintiffs' constitutional rights (id. Counts II, IV, VI, VIII, X, XII), as well as state common law claims for breach of contract (id. Counts XIV-XV), unjust enrichment (Count XVI), and defamation (id. Count XVII), and a claim under Suffolk County's Administrative Code (id. Count XVIII).  The 2005 Complaint also asserted claims for continuing constitutional violations.  (Id. Counts XXVI-XXIX).  Plaintiffs sought relief in the form of: (1) an order of specific performance directing the County to convey to Plaintiffs the parcels for which they were the highest bidders at the 2002 and 2004 Auctions or, in the alternative, damages in an amount equal to the lost profits from the development, sale, and/or rental of the parcels (approximately $3.8 million for the 2002 Auction properties and approximately $1 million for the 2004 Auction properties), and (2) an unspecified amount of damages for Toussie's lost opportunity to purchase additional properties at the 2004 Auction.  (See JPTO at 7; Pl. Damages Stmt. ¶¶ 3-6.)

On May 18, 2007, the Court consolidated the 2001 and 2005 actions in the interest of judicial economy.  (Docket Entry 182.)  This was followed by years of discovery-related litigation and protracted and unsuccessful settlement negotiations.  On July 19, 2011, Plaintiffs stipulated to the dismissal of all claims against and related to Defendants Allen Grecco and Peerless Abstract Corp (2001 Am. Compl. Counts VII-

5

XII), and on August 2, 2011, the Court granted in part and denied in part the County's motion for summary judgment (Docket Entry 278).  <u>Toussie v. Cnty. of Suffolk</u>, 806 F. Supp. 2d 558 (E.D.N.Y. 2011).  The Court granted summary judgment in favor of Defendants Gaffney, Zielinski, Isles and Sabatino on all claims, and in favor of the County on (1) all equal protection claims (2001 Am. Compl. Count II; 2005 Compl. Count III, XX, XXVI); (2) the procedural due process claims arising out of the 2001 and 2002 Auctions (2001 Am. Compl. III; 2005 Compl. Count XXII); (3) the First Amendment freedom of speech claim (2005 Compl. Count VII); (4) all First Amendment retaliation claims (<u>id.</u> Count IX, XXI); (5) the bill of attainder claim arising out of the 2004 Auction (<u>id.</u> Count XIII); (6) the contract claims arising out of the 2001 and 2002 Auctions (2001 Am. Compl. Counts V, VI; 2005 Compl. Count XXIV); (7) all unjust enrichment claims (2005 Compl. Counts XVI, XXV); (8) the defamation claim (<u>id.</u> Count XVII); and (9) the claim for violation of the Suffolk County Administrative Code (<u>id.</u> Count XVIII).

Plaintiffs were permitted to proceed to trial only against the County and only with respect to (1) the bill of attainder claims arising out of the 2001 and 2002 Auctions (2001 Am. Compl. Count I; 2005 Compl. Counts XIX, XXIX); (2) the intimate association claims (2001 Am. Compl. Count IV; 2005 Compl. Counts XI, XXIII); (3) the procedural and substantive due

process claims related to Mr. and Mrs. Toussie's protected property interest arising out of the 2004 Auction (2005 Compl. Counts I, V, XXVII, XXVIII); and (4) the breach of contract claims arising out of the 2004 Auction (id. Counts XIV, XV).

The trial commenced on August 10, 2011.  On August 23, 2011, the Court granted the County's Rule 50 motion to dismiss the breach of contract claims (Tr. 1614-1616), and the jury began its deliberations on August 24, 2011.  On August 26, 2011, the jury returned a verdict in favor of Toussie on the due process claims arising out of the 2004 Auction and in favor of the County on all other claims.  The jury awarded Toussie only $12,500 in damages.

On October 19, 2011, Toussie moved for attorney's fees pursuant to 42 U.S.C. § 1988(b) in the amount of $2,794,929.50. This motion is presently pending before the Court.

<u>DISCUSSION</u>

The Supreme Court has stated that "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).  Not surprisingly, the parties here were unable to settle the attorney's fees issue as Toussie is seeking almost $2.8 million dollars in attorney's fees and the County is asserting that he is entitled to nothing.  Thus, the Court has

reviewed Toussie's motion and the accompanying exhibits, which include over 400 pages of counsel's billing records spanning a period of six years, as well as the County's opposition.

The Court will briefly explain the standard applicable to motions for attorney's fees before turning to the parties' arguments.

I.   Standard under 42 U.S.C. § 1988

Section 1988(b) provides, in relevant part:

> In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

A threshold issue in any motion for attorney's fees is whether the plaintiff was a "prevailing party." Id.  "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." Farrar v. Hobby, 506 U.S. 103, 111, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992); see also Hensley v. Eckerhart, 461 U.S. at 433 ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (internal quotation marks and citation omitted)).  If a plaintiff is determined to be a prevailing party, a "presumption" that he "should recover an attorney's fee [arises]

unless special circumstances would render such an award unjust." Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982) (citations omitted).

Here, it is undisputed that Toussie is a prevailing party under § 1988. See, e.g., Farrar, 506 U.S. at 111 (stating that a plaintiff who obtains an enforceable judgment against the defendant from whom fees are sought is a prevailing party). Thus, the issue is what fee is "reasonable." See Hensley, 461 U.S. at 433; see also Pino v. Locascio, 101 F.3d 235, 238 (2d Cir. 1996).

II.  Reasonable Attorney's Fees

The County argues that any award of attorney's fees would be unreasonable, and hence unjust, because: (1) Toussie's recovery in this case was de minimus and (2) the request for almost $2.8 million in fees is "so unreasonable and grossly excessive" that it could not have been made in good faith.  In the alternative, the County argues that a fee of no more than $25,000 would be reasonable.  The Court will address each of the County's arguments separately.

A.  De Minimus Success

The Supreme Court has repeatedly stated that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained,'" Farrar, 506 U.S. at 114 (quoting Hensley, 461 U.S. at 436); accord Marek v. Chesney,

9

473 U.S. 1, 11, 105 S. Ct. 3012, 87 L. Ed. 2d 1 (1985); Riverside v. Rivera, 477 U.S. 561, 585, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986); see also Pino, 101 F.3d at 237, and the Supreme Court has upheld decisions to deny attorney's fees to plaintiffs who achieve only "technical" or de minimus success, see, e.g., Farrar, 506 U.S. at 117 (O'Connor, J., concurring). Thus, even if a plaintiff is the "prevailing party," if he "recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id. at 115 (majority opinion) (citation omitted); cf. Carroll v. Blinken, 105 F.3d 79, 81 (2d Cir. 1997) ("Where the damage award is nominal or modest, the injunctive relief has no systemic effect of importance, and no substantial public interest is served, a substantial fee award cannot be justified.").

The County argues that because Toussie achieved only an "infinitesimal degree" of success, he is not entitled to recover any attorney's fees. The County's argument is not entirely without merit. Since this action was commenced, Toussie has consistently sought damages equal to the value of the parcels for which Plaintiffs were the highest bidders at the 2001, 2002, and 2004 Auctions (less the winning bid amount)[1] and

---

[1] At trial, Plaintiffs' counsel indicated that, collectively, the properties were worth upwards of $10 million. (Tr. 1813-14.)

$30 million in damages arising out of Safra Bank's pulling Toussie's line of credit in 2001. Yet, the jury found no liability with respect to the 2001 and 2002 Auctions, and, although the jury did find in favor of Toussie on the due process claims arising out of the 2004 Auction, it declined to award any damages related to the value of the parcels for which Toussie was the highest bidder in 2004. Instead, the jury awarded Toussie only $12,500--a mere third of a percent of what he submitted to the jury.[2]

Toussie argues that his success was not <u>de minimus</u> because (1) he was awarded more than nominal damages and (2) his constitutional rights were vindicated. The Court disagrees.

<u>First</u>, at least one court in this circuit has refused to award attorney's fees to a plaintiff who recovered more than one dollar. <u>See</u> <u>Adams v. Rivera</u>, 13 F. Supp. 2d 550, 552 (S.D.N.Y. 1998) (finding that although the Supreme Court's holding in <u>Farrar</u> "would not preclude an award of attorneys' fees [where] the jury . . . found actual, rather than nominal damages[,] . . . nothing in <u>Farrar</u> requires the award of attorneys' fees to a prevailing party simply because its

---

[2] Toussie's counsel submitted to the jury damages in the following amounts: $5,329,000 arising out of the 2001 Auction, $3,860,000 arising out of the 2002 Auction, $2,601,200 arising out of the 2004 Auction, $3,000,000 due to Safra Bank's pulling Toussie's line of credit, and $21,000,000 related to the property on Horseblock Road. (Tr. 1813-14.)

recovery is more than the one dollar given for nominal damages" (citations omitted)).

Second, vindication of constitutional rights, without more, does not necessarily justify an award of attorney's fees. To determine whether a prevailing party's recovery was de minimus such that no fees can be awarded, courts often apply the tripartite test articulated by Justice O'Connor in her concurring opinion in Farrar. See, e.g., Adams, 13 F. Supp. 2d at 552 (collecting cases); Haywood v. Koehler, 885 F. Supp. 624, 629 (S.D.N.Y. 1995), aff'd, 78 F.3d 101 (2d Cir. 1996). Under that test, a plaintiff's recovery is "technical" or de minimus if: (1) there is "a substantial difference between the judgment recovered and the recovery sought," (2) the legal issue on which the plaintiff claims to have prevailed is relatively insignificant, and (3) the litigation accomplished nothing "other than occupying the time and energy of counsel, court, and client." Farrar, 506 U.S. at 121-22 (O'Connor, J., concurring). The Court has already determined that there is a substantial difference between the judgment recovered and the recovery sought. Further, the Second Circuit has held that "[t]he vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief."

12

<u>Pino</u>, 101 F.3d at 239.   And, here, aside from his minimal monetary recovery, Toussie achieved nothing:  the jury found that, although the County could not bar Toussie from bidding at auctions, it had no obligation to sell him any parcels.  Thus, while Toussie "may have won a point, . . . the game, set, and match all went to the defendants."   <u>Farrar</u>, 506 U.S. at 121 (O'Connor, J., concurring).

Nonetheless, as Toussie recovered more than nominal damages and the jury verdict will likely deter similar due process violations by the County in the future, the Court finds that Toussie's success is not so trivial that the only reasonable fee is no fee at all.

 B. <u>Grossly Excessive</u>

The County also argues that Toussie's fee application "is so unreasonable and grossly excessive that it should be denied in its entirety." (Cnty. Opp. 19.)  The Court agrees.

In determining whether a fee application is reasonable, the Supreme Court has again emphasized that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." <u>Hensley</u>, 461 U.S. at 440.

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable

13

> fee. Where a lawsuit consists of related claims, a plaintiff who has won a substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

Id. The party seeking attorney's fees "bears the burden of establishing entitlement to an award," and "[t]he applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437 (citations omitted).[3]  Counsel for the party seeking fees must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," id. at 434, and failure to do so can result in denial of fees altogether, see, e.g., Fair Hous. Council v.

---

[3] The Supreme Court has stated that the level of detail in a lawyer's bills to his client is often insufficient to support a motion to recover fees under § 1988:

> In the [former] case, the attorney and client have presumably built up a relationship of mutual trust and respect; the client has confidence that his lawyer has exercised the appropriate 'billing judgment,' and unless challenged by the client, the billing does not need the kind of extensive documentation necessary for a payment under § 1988.

Hensley, 461 U.S. at 441 (Burger, C.J., concurring).

Landow, 999 F.2d 92, 93 (4th Cir. 1993) (reversing district court's award of $20,000 and remanding with instructions to deny the fee request in its entirety because it was "so outrageously excessive so as to shock the conscience of the court"); Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980) (finding that the denial of an "outrageously excessive" fee request was "an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees"); Lewis v. Kendrick, 944 F.2d 949, 956 (1st Cir. 1991) (reversing district court's fee award because "turn[ing] a single wrongful arrest into a half year's work, and seek[ing] payment therefor, with costs, amounting to 140 times the worth of the injury, is, to use a benign word, inexcusable"); Scham v. Dist. Cts. Trying Crim. Cases, 148 F.3d 554, 557-58 (5th Cir. 1998) (upholding denial of an "outrageous" request for attorney's fees); cf. Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1127-28 (9th Cir. 2008) (reversing denial of attorney's fees when "there [was] no evidence that [the] fee request was either made in bad faith or contained excessive hours spent on unrelated claims").

The Court finds that Toussie's fee application is so outrageously excessive and unreasonable that it could not possibly have been made in good faith. First, as there is a

mixture of both related and unrelated claims,[4] Toussie's counsel had an obligation to differentiate between the distinct claims in its bills submitted to the Court and to seek compensation only for the claims for which Toussie was successful. Although counsel assert that they have done this and portions of the bills submitted to the Court have been redacted, the remaining time entries are replete with tasks unrelated to the due process claims arising out of the 2004 Auction. (See, e.g., Pl. Ex. 4, Docket Entry 326-6 at 5 (Braunstein time entry dated 2/22/05 billing for "research[ing] state law claims" and the "availability of implied causes of action under State Constitution");[5] Pl. Ex. 4, Docket Entry 326-6 at 11 (Mogin time entry dated 3/17/05 billing for "edit[ing] pro hac vice papers re 1st auction case"); Pl. Ex. 4, Docket Entry 326-6 at 19 (Braunstein time entry dated 4/11/05 billing for "legal research re: intentional tort of abuse of process"); Pl. Ex. 6, Docket Entry 326-13 at 67 (Cross time entry dated 8/4/11 billing for

---

[4] The claims arising out of the 2004 Auction are factually only minimally related to the claims arising out of the 2001 and 2002 Auctions, and the due process claims arising out of the 2004 Auction are based on legal concepts distinct from Plaintiffs' other constitutional claims.

[5] The Court notes that counsel utilized block time entries--i.e., each attorney submitted one time entry per day that described all of the work performed on this case on that particular day. The examples of counsel's time entries cited throughout this Memorandum and Order often reference only one of a number of tasks performed by a particular attorney on a given date.

"research[ing] case law re bill of attainder, right of intimate associate, contract damages"); Pl. Ex. 6, Docket Entry 326-8 at 46 (Balber time entry dated 8/25/06 billing for "analysis of bidders with criminal records");[6] Pl. Ex. 6, Docket Entry 326-10 at 14 (Pulley time entry dated 2/13/08 billing for "[r]eview[ing] and distribut[ing] charts re: 2001, 2002, and 2004 damages"); Pl. Ex. 6, Docket Entry 326-8 at 39 (Balber time entry dated 8/2/06 billing for, inter alia, "[p]reparation for depositions of F. Ford, L. Bonacci and W. Thompson" and "teleconference with A. Binder")[7].)

          In addition to the above examples, Toussie is also seeking attorney's fees for: (1) the extensive time counsel

---

[6] Although it does not explicitly state in Balber's time entry, such research relates to Plaintiffs' class-of-one equal protection claims which require proof of differential treatment of similarly situated individuals. See Toussie, 806 F. Supp. 2d at 577. (See also, e.g., Pl. Ex. 6, Docket Entry 326-8 at 57 (Hunn time entry dated 9/19/06 billing for "investigation of previous purchasers of Suffolk County real estate").)

[7] While the individual legislators were integrally involved in the claims arising out of the 2001 and 2002 Auctions, Isles, Zielinski, and Sabatino--not the Suffolk County legislators--made the decision to reject Toussie's bids at the 2004 Auction. See Toussie, 806 F. Supp. 2d at 570. Thus, any discovery and/or trial prep with the legislators is not related to the claims on which Toussie was successful and is not compensable. (See also, e.g., Pl. Ex. 6, Docket Entry 326-13 at 36 (Zafran time entry dated 6/25/11 billing for "[r]eview[ing] Gaffney deposition; add[ing] aspects of Gaffney, Binder, Thompson and Bonacci depositions to theory of the case; begin[ning] to review minutes of County and Committee meetings"); Pl. Ex. 6, Docket Entry 326-8 at 69 (Lowell time entry dated 10/12/06 billing for "[r]eview[ing] Suffolk County Ways and Means Minutes").)

spent communicating with his son Isaac (see, e.g., Pl. Ex. 6, Docket Entry 326-8 at 31 (Balber time entry dated 7/11/06); Pl. Ex. 6, Docket Entry 326-13 at 35 (Lowell time entry dated 6/22/11); Pl. Ex. 6, Docket Entry 326-13 at 61 (Abrahams time entry dated 7/29/11); Pl. Ex. 4, Docket Entry 326-6 at 10 (Petrosinelli time entry dated 3/1/05)), even though Isaac related only to the intimate association claims,[8] see Toussie, 806 F. Supp. 2d at 584; (2) time spent preparing the notice of pendency (see, e.g., Pl. Ex. 6, Docket Entry 326-8 at 33 (Hunn time entry dated 7/19/06)), which was a separate cause of action altogether, see Toussie v. Suffolk Cnty., No. 05-CV-2954 (E.D.N.Y.), and was voluntarily dismissed by Plaintiffs via stipulation on January 24, 2012; (3) all time spent preparing the motion to consolidate the 2001 Amended Complaint with the 2005 Complaint (see, e.g., Docket Entry 326-8 at 47 (Hunn time entry dated 8/29/06)), which in no way contributed to Toussie's success on the 2004 due process claims; (4) the time spent preparing and reviewing the experts' property appraisals (see, e.g., Docket Entry 326-8 at 59 (Balber time entry dated 9/25/06)), even though the jury declined to award Toussie damages equal to the value of the parcels for which he was the

---

[8] Toussie stated that his son had little to no involvement in the day-to-day operations of his business, so the Court speculates as to why such a significant amount of time spent communicating with Issac was necessary.

highest bidder; (5) discovery related to Safra Bank (see, e.g., Docket Entry 326-8 at 83 (Pulley time entry dated 11/7/06)), even though the jury declined to award damages arising out of Safra Bank's pulling Toussie's line of credit; (6) discovery related to a subsequent auction in 2007 (see, e.g., Docket Entry 326-13 at 4 (Pulley time entry dated 12/1/10)), which the Court precluded Plaintiffs from introducing during the course of the trial (see Electronic Order, Aug. 4. 2011); and (7) time spent preparing a jury questionnaire (see, e.g., Docket Entry 326-13 at 38 (Lowell time entry dated 6/29/11)) which the Court declined to use finding "no justification for jurors to complete such questionnaire" (Order, Docket Entry 247, July 8, 2011).

Such requests shock the conscience given that counsel affirmatively stated that these fees were being excluded from the fee request (see Pl. Mot. 9 ("Plaintiff has not included any fees incurred exclusively in connection with the 2001 Auction, the additional claims from the 2005 Action, or any other related disputes, e.g., the lis pendens action filed on May 19, 2005.")), and, as these unreasonable fee requests so permeate counsel's time sheets, they could not have been included by mistake.

Second, Toussie's lawyers appear to be seeking fees for all time entries that do not specifically refer to the 2001 Amended Complaint (see, e.g., Pl. Ex. 4, Docket Entry 326-6 at

10 (Braunstein time entry dated 1/25/05 billing for "legal research"); Pl. Ex. 6, Docket Entry 326-8 at 16 (Pulley time entry dated 6/15/06 billing for "[c]onduct[ing] research and composi[ng] re elements of causes of action"); Pl. Ex. 6, Docket Entry 326-13 at 38 (Lowell time entry dated 6/28/11 billing for "[p]repar[ing] for trial"); Pl. Ex. 6, Docket Entry 326-13 at 14 (Abrahams time entry dated 2/26/11 billing for "[a]ttention to drafting and conducting legal research for opposition to summary judgment motion")), arguing that such time is compensable because "[a]ll of the claims . . . brought by Plaintiff involved a common core of facts and were based on related legal theories." (Pl. Mot. 9.)   The Court disagrees.   There were three distinct auctions at issue, and although a majority of Plaintiffs' claims were brought pursuant to 42 U.S.C. § 1983, the Court fails to see the overlap between, for example, claims under the First Amendment or bill of attainder clause and the due process claims.   Only a fraction of this time would be considered "reasonable," given that Toussie only succeeded on two claims. Yet counsel proposed no reduction related to their vague and generic entries, such as "research," "summary judgment briefing," and "trial prep."   Further, counsel have a duty to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims," Hensley, 461 U.S.

at 436, yet counsel frequently failed to identify which claims they were working on in a given time entry.

Third, Toussie's lawyers have failed to segregate their hours spent traveling (see, e.g., Pl. Ex. 6, Docket Entry 326-8 at 32 (Balber time entry dated 7/17/06 for "[t]ravel to and from Hauppauge")) and are seeking 100 percent compensation for such hours, even though Magistrate Judge Arlene Rosario Lindsay previously advised that only 50 percent of travel time is recoverable.  See Toussie v. Cnty. of Suffolk, No. 01-CV-6716, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (Judge Lindsay's order awarding Plaintiffs attorney's fees in connection with their successful spoliation motion); see also Anderson v. City of N.Y., 132 F. Supp. 2d 239, 243 (S.D.N.Y. 2001) (stating that travel time is usually compensated at 50 percent of counsel's hourly rate); Hugee v. Kimso Apartments, L.L.C., --- F. Supp. 2d ----, 2012 WL 1096086, at *14 (E.D.N.Y. Apr. 3, 2012) (collecting cases).  Counsel have not provided the Court with exactly how many hours of travel time for which they seek attorney's fees, and, thus, the Court is unable to calculate the 50 percent discount (without scouring each time entry in the nearly 450 pages of billing records submitted to the Court).  Counsel's failure in this regard, given Judge Lindsay's prior order and applicable case law, appears to be purposeful and in bad faith.

Fourth, Toussie's lawyers seek an award based on hourly rates ranging from $375 to $905 per hour for counsel and $250 per hour for a paralegal.  However, these rates greatly exceed the rates currently being awarded in the Eastern and Southern Districts, see Barkley v. United Homes, L.L.C., Nos. 04-CV-0875, 05-CV-0187, 05-CV-4386, 05-CV-5302, 05-CV-5362, 05-CV-5679, 2012 WL 3095526, at *7 (E.D.N.Y. July 30, 2012) (stating that courts in this district have recently awarded fees in the range of $300-400 per hour for partners, $200-300 for senior associates, and $100-200 for junior associates (collecting cases)); Maldonado v. La Nueva Rampa, Inc., No. 10-CV-8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (stating that courts in that district "have determined that the range between $250 and $450 is generally an appropriate fee for experienced civil rights and employment law litigators"), and Judge Lindsay appropriately reduced Plaintiffs' fee request in connection with their spoliation motion to hourly rates ranging from $450 to $300 per hour, see Toussie, 2011 WL 2173870, at *2. Yet, counsel in the pending motion nonetheless propose using their actual billing rates to calculate the amount of attorney's fees due here.[9]  Given Judge Lindsay's prior order and counsel's

_____

[9] Mr. Balber, in his affidavit submitted in support of Toussie's motion for attorney's fees, states that "[s]everal attorneys worked on this case from 2005 through 2011, and as such, the hourly rate has changed over a six year time period."  (Balber

failure to provide the court with "satisfactory evidence--in addition to the attorneys' own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), the Court finds counsel's proposed rates to be excessive and unreasonable.

Fifth, counsel had indicated that "all fees that were not reasonably related to the Claims [for which judgment was entered in Toussie's favor] were excluded and redacted from the invoices" provided to the Court in support of Toussie's motion. (Balber Aff. ¶ 6.) The records provided to the Court have been redacted in two ways:  (i) entire time entries--i.e., date, attorney, description, and time--are redacted or (ii) just portions of the description are redacted (see, e.g., Pl. Ex. 6, Docket Entry 326-8 at 17 (Balber time entry dated 6/20/06)). Toussie's lawyers do not appear to be seeking compensation for the time entries that were redacted in their entirety. However, they do appear to be seeking full compensation for the time entries that were partially redacted, notwithstanding counsel's

Aff. ¶ 8.)  Yet, the papers do not break down how many hours each attorney billed at a given rate, so the Court is unable to verify whether counsel's proposed figures are even accurate. This also prevents the Court from simply applying more reasonable rates to the hours billed.

assertion that portions of this time are "not reasonably related" to the 2004 due process claims.[10]

Sixth, Mr. Balber's affidavit states that lawyers Joseph G. Petrosinelli, Paul Mogin, and Todd F. Braunstein of Williams & Connolly billed 19.25, 131.5 and 64.25 hours respectively. (Balber Aff. ¶ 7.) However, the Court has reviewed the records submitted in support of such figures (see Pl. Ex. 4) and finds that Toussie has only provided support for 14.75, 107, and 42 hours respectively--a difference of 72 hours or $29,366.25.[11]

Finally, and perhaps most egregiously, Judge Lindsay previously awarded Plaintiffs' counsel $21,385 (of the $47,640.10 requested) in attorney's fees in connection with their motion for sanctions. See Toussie, 2011 WL 2173870, at *2. Counsel have included all of the hours for which they were compensated by Judge Lindsay in the pending request for attorney's fees. They multiplied those hours by their actual

---

[10] The Court notes that counsel may be redacting entries that they believe are protected by attorney-client privilege. However, the Court is speculating, as Toussie has not invoked the privilege.

[11] The Court has compared the hours of Hamburger, Maxson, Yaffe, Knauer & McNalley, LLP and McDermott Will & Emery as stated in the Balber Affidavit with the firms' billing records and finds them to be accurate. The Court has not confirmed whether the total number of hours submitted by Chadbourne & Parke (nearly 4,500 hours) is accurate.

hourly rates, and then subtracted the $21,385 awarded by Judge Lindsay from the total. (Balber Aff. ¶ 5.) However, in subtracting the monetary award from the final calculation, as opposed to the hours spent in connection with the motion for sanctions from the total hours per lawyer, counsel are seeking to recover the fees that Judge Lindsay already determined were unreasonable (i.e., the difference between the $47,640.10 requested and the $21,385 awarded).

The Court finds that the above examples clearly evidence counsel's bad faith in seeking almost $2.8 million in attorney's fees and more than justify a complete denial of attorney's fees.[12] As the Seventh Circuit stated in Brown,

> If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.

612 F.2d at 1058. Here, counsel have so grossly inflated their fee application to a figure more than 200 times Toussie's recovery--by ignoring prior directives of Judge Lindsay, seeking

---

[12] While there are four separate law firms seeking attorney's fees, the issues discussed above permeate all of the firms' billing records, with the exception of the fees submitted by Mr. Hamburger in connection with his testifying on behalf of Toussie. Mr. Hamburger's witness fees, however, are more appropriately characterized as costs, as he was no longer representing Toussie when he testified on his behalf, and the parties resolved the issue of costs without Court intervention.

fees related to claims on which Plaintiffs obviously did not prevail, misrepresenting the total number of hours billed, and providing extraordinarily vague descriptions of billable hours in block time entries such that the Court cannot even begin to determine how many hours were actually spent on Toussie's successful claims--in the hopes that the Court would award even a small fraction of that.[13]   Such conduct will not be tolerated, and, accordingly, the Court declines to award any attorney's fees.

<u>CONCLUSION</u>

For the foregoing reasons, Toussie's motion for attorney's fees is DENIED in its entirety.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:      September 6, 2012
            Central Islip, New York

_____

[13]   The Court notes that although counsel frequently applied ten percent discounts to their fees to Toussie (<u>see, e.g.</u>, Pl. Ex. 6, Docket Entry 326-13 at 16; Pl. Ex. 4, Docket Entry 326-6 at 9), no such discount was proposed in the pending motion.